[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 325.]

HURST, EXR., APPELLEE, *v*. OHIO DEPARTMENT OF REHABILITATION AND

CORRECTION, APPELLANT.

[Cite as *Hurst v. Ohio Dept. of Rehab. & Corr*., 1995-Ohio-68.]

*Torts—Wrongful death, negligence and negligence per se—Parole violator*
*participate in beating death of a person—Ohio Department of*
*Rehabilitation and Correction not guilty of negligence per se, when—Public*
*duty rule applies to bar liability on part of Adult Parole Authority, when*.

(No. 93-2385—Submitted February 8, 1995—Decided June 21, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-672.

_____

{¶ 1} Gary E. Smith was paroled from the Lebanon Correctional Institution
on January 21, 1991. He was ordered to reside in the Toledo Volunteers of America
("VOA") halfway house and was assigned to a parole officer. On March 10, 1991,
Smith failed to return to the VOA and was declared absent without leave. The
following day, the parole officer filed an arrest report with the Toledo Police
Department. The effect of this report was to alert the local police of Smith's AWOL
status and to place on file an arrest order. This information was not disseminated
beyond the Toledo Police Department.

{¶ 2} Pursuant to the policy of appellant, Ohio Department of
Rehabilitation and Correction, the parole officer waited thirty days before drafting
a parole violator at-large ("PVAL") report on April 10, 1992. Thereafter he
discussed the situation with his supervisor, who approved the PVAL report with
minor modifications. There is some confusion as to what happened to the PVAL
report next. The supervisor believes that two reports were forwarded to Columbus,
one on April 16 or 17 and a second one on April 30. However, elsewhere the record

indicates that the next step in the process did not occur until May 2, 1991, when an Adult Parole Authority case analyst validated the report for factual accuracy.

{¶ 3} After completing his duties, the case analyst passed the PVAL report to a secretary, who prepared special minutes for the signature of the Chief of the Adult Parole Authority. On May 8, 1991, the PVAL report was forwarded to another person to be entered into two computer networks, the National Crime Information Center and the Law Enforcement Automated Data System. However, the data was never entered, apparently because Smith was arrested that same day for his participation in the beating death of Della W. Hawkins.

{¶ 4} In the interim, on April 14, as a result of the delay in processing the PVAL report and the failure to enter Smith's at-large status into the computer networks, the department had missed an opportunity to hold him. Smith was arrested in Allen County on a charge of driving under the influence. He was sentenced on the charge and was incarcerated in Allen County from April 14 to May 4.

{¶ 5} Appellee Minnie Ruth Hurst, executor of the estate of Ms. Hawkins, filed suit in the Court of Claims against the Ohio Department of Rehabilitation and Correction. The complaint alleged wrongful death, negligence and negligence per se against the department for its delay in processing the Smith PVAL report. The Court of Claims granted summary judgment for the department. The court of appeals reversed, holding that the Court of Claims erred by applying the public duty doctrine and not a rule of negligence *per se* to the conduct of the representatives of the authority.

{¶ 6} The matter is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Gooding, Huffman, Kelley & Becker* and *Matthew C. Huffman*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Eric A. Walker*, Assistant Attorney General, for appellant.

_____

**MOYER, C.J.**

{¶ 7} By its sole proposition of law, the department argues that it is immune from liability by operation of the public duty rule and that the court of appeals incorrectly concluded that the department could be found to be negligent *per se*. For the reasons that follow, we reverse the judgment of the court of appeals.

{¶ 8} The public duty rule was adopted by this court in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468. In paragraph two of the syllabus, we held, "[w]hen a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, it is generally a public and not an individual injury." Conversely, recovery for negligent conduct may be awarded if the conduct of the public official falls within a so-called special duty exception. A special duty may be found if there is "(1) an assumption by the [governmental entity], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [entity's] agents that inaction could lead to harm; (3) some form of direct contact between the [entity's] agents and the injured party; and (4) that party's justifiable reliance on the [entity's] affirmative undertaking." *Sawicki*, paragraph four of the syllabus.

{¶ 9} In reversing the Court of Claims' application of the public duty doctrine, the court of appeals expressed reservations concerning the continued vitality of the public duty rule in light of our decisions in *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 ORB 506, 471 N.E.2d 776, and *Crawford v. Ohio Div. of Parole & Community Serv.* (1991), 57 Ohio St.3d 184, 566 N.E.2d 1233. However, *Reynolds* and *Crawford* are clearly distinguishable from *Sawicki* and from this case.

{¶ 10} In both *Reynolds* and *Crawford* we held that the state was negligent *per se* for failing to confine a furloughed prisoner during nonworking hours. We reasoned that the decision to furlough a prisoner was an executive decision, but once the decision was made, R.C. 2967.26(B) imposed a specific, affirmative duty to confine the prisoner during nonworking hours. At the time pertinent to this case, R.C. 2967.26(B) imposed a specific, affirmative duty to confine the prisoner during nonworking hours. At the time pertinent to this case, R.C. 2967.26(B) provided that a prisoner "who is granted a furlough pursuant to this section *** shall be confined during any period of time that he is not actually working at this approved employment *** or engaged in other activities approved by the department." 142 Ohio Laws, Part 1, 287. We have held that [w]here there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se." *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of the syllabus.

{¶ 11} However, where the duty is defined "only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application." *Swoboda v. Brown* (1935), 129 Ohio St.512, 523, 2 O.O. 516, 521, 196 N.E. 274, 279. In *Eisenhuth* we further explained that where the duty prescribed by the enactment is so specific that the only determination necessary by the jury is to find but a single fact, a violation of the statute, then there is negligence *per se*. Conversely, if the jury must determine negligence from a consideration of several facts and circumstances, then negligence *per se* is inapplicable. *Id.,* 161 Ohio St. at 373-374, 53 O.O. at 277-278, 119 N.E.2d at 444.

{¶ 12} Accordingly, in *Reynolds* and *Crawford* we held that the statutory language "shall be confined" imposed a specific, affirmative duty upon the state,

4

the violation of which constituted negligence *per se*. The statutes pertaining to paroled prisoners are not identical in nature or degree to those relating to furloughed prisoners.

{¶ 13} R.C. 5149.04(A) provides that "[p]ersons paroled *** shall be under jurisdiction of the adult parole authority and shall be supervised *** in such manner as to insure as nearly as possible the parolee's rehabilitation which at the same time providing maximum protection to the general public." Additionally, former R.C. 2967.15 stated that "a prisoner who has been paroled, who in the judgment of the adult parole authority, has violated the conditions of his *** parole shall be declared a violator.

"Whenever any parole officer has reasonable cause to believe that any parolee under the supervision of the authority has violated the terms or conditions of his *** parole, such parole officer may arrest such parolee ***.

"***

"In the event such parolee is declared to be a parole violator the superintendent shall within a reasonable time, order his return to the institution from which he was paroled.

"***

"In the event a parolee absconds from supervision such fact shall be reported by the superintendent to the authority, in writing, and the authority shall enter an order upon its official minutes declaring such parolee to be a parole violator at large. ***" 130 Ohio Laws, Part II, 154-155.

{¶ 14} Finally, Ohio Adm. Code 5120:1-1-16 provides:

"(A) Whenever a releasee absconds from supervision, such fact shall be reported at the earliest practicable time by the Unit Supervisor, or other supervisor of the releasee, to the Chief of the Adult Parole Authority, or his designee, in writing.

"(B) Upon receipt of such report by the Adult Parole Authority, the releasee may be declared a violator-at-large and such declaration entered into its official minutes or such decision may be delayed pending further investigation."

{¶ 15} The duties imposed upon the department regarding parolees are significantly different from those involving furloughed prisoners. A furloughed prisoner remains incarcerated, whereas a paroled prisoner has been given a conditional release from prison. The only affirmative duty imposed is to report the status of a parole violator as at-large and to enter this fact into the official minutes of the Adult Parole Authority. The parties agree this was done. The dispute centers on whether the act was performed timely. However, the duty to advise the authority is described in terms of reasonableness. Furthermore, the parties have failed to bring to our attention, nor has our research discovered, a statute or rule that imposes a specific, affirmative duty of the authority to enter the violator's name on any computer network.

{¶ 16} It is the failure to respond in a timely fashion or to enter the violator's name into a computer network that is alleged to be negligence; however, both require a determination of reasonableness and discretion. Since the finder of fact must determine the issue of liability by deciding more than whether a specific safety statute was violated, negligence *per se* is inapplicable. It follows that ordinary principles of negligence, including the public duty rule, apply to the conduct of the Adult Parole Authority.

{¶ 17} The public duty rule comprises a defense independent of sovereign immunity. *Sawicki, supra*, 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph three of the syllabus. The rule originated in English common law and survived the abrogation of sovereign immunity. *Id.* at 229-230, 525 N.E.2d at 476-477. It is used to determine the first element of negligence, the existence of a duty on the part of the state. If the duty owed is general in nature, the wrong created by its breach is to the public in general and, therefore, not individually actionable. *Id*. at 230,

525 N.E.2d at 477, citing 2 Cooley, Law of Torts (4 Ed. 1932) 385-386, Section 300.

{¶ 18} As the statutes relating to each indicate, parole and furlough are very different in their purpose. So, too, are *Reynolds* and *Crawford* distinguishable precedent. The statutes at issue herein do not establish specific affirmative duties to any person. Rather, they prescribed a general procedure for granting parole from prison and reporting violators of parole. Because appellee has failed to establish the existence of a special duty owed the decedent by the state, the public duty rule applies to bar liability on the part of the Adult Parole Authority.

{¶ 19} The judgment of the court of appeals is reversed.

*Judgment reversed.*

WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS, J., dissents and would affirm the judgment of the court of appeals in all respects.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 20} Della Hawkins is dead. Gary Smith was a parole violator at large ("PVAL") for over seven weeks when he killed Della. Just four days before Della's murder, Smith finished a three-week stint in the Allen County Correctional Facility for driving under the influence. Lacking the appropriate information on the prisoner,. Allen County officials released him, since they had no idea they were holding a PVAL.

{¶ 21} In the days when a federal marshal rode over his territory on horseback and handed out wanted posters, a lack of communication between jurisdictions was expected. It was understandable that outlaws would easily evade detection when only trains connected most towns and electricity was still a fascination. Incomplete information was even common when telephones had dials

and documents actually traveled by mail. This, however, is the age of computers, fax machines, and mobile phones—instantaneous communications—the information age. Today we expect more, and the state has promised us more.

{¶ 22} The majority contends that the Department of Rehabilitation and Correction cannot be negligent for losing Gary Smith, nor for allowing his parole violation to go unreported. The majority states that "the duties imposed upon the [Department of Rehabilitation and Correction] regarding parolees are significantly different from those involving furloughed prisoners," and that, therefore, Della's estate cannot pursue its claim as the plaintiffs had in *Reynolds* and *Crawford.*

{¶ 23} While the duties involved may differ, the key fact remains that the state does have certain statutorily defined duties regarding paroled prisoners. It is that existence of a statutory duty that took *Crawford,* and which should take this case, out of the realm of *Sawicki.*

{¶ 24} Every negligence case has four factors: duty, a breach of that duty, damage, and causation. *Sawicki* stands for the notion that the state owes the public no general, actionable duty to exercise ordinary care. In *Crawford*, however, this court held that the state does create an actionable duty to the public when it sets certain specific statutory standards for itself. The plaintiff in *Reynolds* went on to prove the breach of that duty and linked that breach to the injuries suffered.

{¶ 25} In this case, we are still at the first step, duty. The fact that the duty the state statutorily defines for itself in this case is, in the majority's words, "described in terms of reasonableness," is relevant to whether the duty was breached, not to whether the duty exists. In *Crawford*, the question of breach answered itself, since the statute required furloughees to be confined, and the assailant in that case obviously was not. The plaintiffs in this case will have a tougher row to hoe because of some leeway the state has created for itself -- the statutory and Administrative Code sections require a PVAL's supervisor to report that status to the Chief of the Adult Parole Authority "at the earliest practicable

8

time" (Ohio Adm. Code 5120:1-1-16[A]) and the superintendent of parole supervision to order a PVAL returned to confinement "within a reasonable time" (former R.C. 2967.15). However, the fact that it will be harder to prove a breach of a duty does not mean that the duty does not exist. Therefore, the trial court wrongly granted the state summary judgment.

{¶ 26} The state's duties regarding furloughed prisoners and paroled prisoners are different. While the differences are legitimate, to hold that an injured person may recover for the state's breach of duty regarding a furloughee but not for its breach of duty regarding a parolee defies both logic and fairness. To summarily excuse the state from liability in the death of Della Hawkins clings to the antiquated and incorrect British notion that "the King can do no wrong."

{¶ 27} The trial court should allow a determination by the trier of fact on the question of the state's breach of duty. If the delays in this case were not reasonable in light of manpower demands, technology, and other factors, then the state breached its duty. Whether that breach proximately caused Della's death is another factual question.

{¶ 28} Della Hawkins will have no other days on earth, but her heirs should have their day in court.

_____