OPINION
{¶ 1} Appellants, Jeffrey Spencer, Administrator of the Estate of Matthew Spencer; Jeffrey and Helen Spencer, appeal from a Judgment entered on the jury verdict in favor of the Lakeview School District in a wrongful death action filed on behalf of their minor son. For the reasons that follow, we affirm.
 {¶ 2} On January 27, 1997, Matthew Spencer was a fourteen-year old student in the eighth grade. Matthew had a history of mild asthma. During gym class on January 27, 1997, Matthew asked his teacher, Mr. Jeffrey Terlecky, for permission to retrieve his prescription inhaler from the locker room. Terlecky granted the request. Approximately five to fifteen minutes later, another teacher found Matthew lying on the locker room floor, inhaler in hand. Matthew was unconscious and was not breathing. Matthew was later pronounced dead despite the administration of medical treatment.
 {¶ 3} Appellants timely appealed a judgment entered on the verdict by the Trumbull County Court of Common Pleas. Appellants assert five assignments of error:
 {¶ 4} "[1.] The trial court erred in denying appellants' motion in limine [sic] and over objection, allowing irrelevant and prejudicial evidence regarding the standard of care of the parents.
 {¶ 5} "[2.] The trial court erred by granting a motion to bifurcate on the day of trial causing unfair prejudice to the appellants.
 {¶ 6} "[3.] The trial court erred by failing to instruct the jury on negligence per se, [sic]where the court had been instructed by the Court of Appeals that if a student carried prescription medication with them on school grounds, they were in violation of the written school policy prohibiting same.
 {¶ 7} "[4.] The trial court erred by precluding impeachment of appellee's expert witness.
 {¶ 8} "[5.] The trial court erred by precluding evidence admissible under the business exception to the hearsay rules."
 {¶ 9} For their first assignment of error, Appellants assert that the trial court erred in allowing "irrelevant and prejudicial evidence regarding the standard of care of the parents." The admissibility of evidence is generally best determined by the trial court and absent an abuse of discretion, it will not be overturned. State v. Sage (1987)31 Ohio St.3d 173, 182. Abuse of discretion "implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable." Ruwe v. Board of Township Trustees (1987),29 Ohio St.3d 59, 61.
 {¶ 10} Evidence Rule 401 defines relevant evidence as "any evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable * * *" It makes sense that this determination is best left to the trial court judge. Columbus v.Taylor (1988), 39 Ohio St.3d 162.
 {¶ 11} The trial court judge in this matter made it clear that the evidence regarding the parents' treatment and care of Matthew was not the standard of care. Rather, the testimony from the parent of Matthew went straight to the heart of foreseeability and consequently was a relevant factor in a determination of negligence, not as the standard of care.
 {¶ 12} Mr. Jeffrey Spencer, father to Matthew, testified at trial regarding procedures followed in the family home when Matthew would retreat from a family or social activity to retrieve his inhaler. Mr. Spencer testified that it was routine that Matthew retrieve and administer his inhaler without supervision.
 {¶ 13} The circumstances of this case were not such that a layman's interpretation and understanding were irrelevant. Bruniv. Tatsumi (1976), 46 Ohio St.2d 127. The evidence of procedures followed by Matthew's parents in the event of an asthma attack or request for inhaler usage by their son were therefore relevant. These facts were further not prejudicial to appellants as appellants presented evidence on what they believed was the standard of care in the form of an educational consultant named Mr. Mason.
 {¶ 14} We find that the evidence was relevant and was not prejudicial. Appellants' first assignment of error is without merit.
 {¶ 15} In their second assignment of error, appellants argue that the trial court's decision to bifurcate the liability and damages portions of the trial on the day of trial caused unfair prejudice to appellants. Civ.R. 42 allows for the bifurcation of issues at trial "after a hearing, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."
 {¶ 16} Appellants essentially claim they were prejudiced due to the fact that the court ruled on the motion on the day of trial. Appellants also advance the prejudice argument as a result of the trial court's previously expressed inclination to deny said motion.
 {¶ 17} Civ.R. 42(B) allows courts to separate issues of liability and damages. Courts may be more inclined to separate liability from damages when there are emotionally-charged circumstances as mirrored by the facts of this case. "A trial court is in the best position to determine whether a bifurcation of issues is necessary." Grand Trunk Western R.R. v. Cothern
(Mar. 17, 1995), 6th Dist. No. L-93-112, 1995 Ohio App. LEXIS 926, 11. Therefore, absent an abuse of discretion, a decision regarding bifurcation will not be disturbed. Id.
 {¶ 18} Appellants' arguments regarding prejudice are not well-taken due to the fact that appellants could not show any clear correlation between the timing and the presentation of their case as resulting in a negative outcome. Clearly, there was at least one plane ticket which was purchased that could have possibly been refunded had the issues been presented and ruled upon more timely, but the nexus between that plane ticket and the jury decision fails.
 {¶ 19} Although the timing of both the filing of the motion to bifurcate and the ruling on said motion is distasteful considering the preparation and associated costs for this type of litigation; the timing alone is not enough to rise to the level where we can say the trial court was "unreasonable, arbitrary or unconscionable." Our decision is further bolstered by the fact that although the appellants filed a pleading in opposition to the motion to bifurcate, appellants did not seek out a ruling on the motion prior to the day of trial despite the fact that the hearing had been held the previous week during the final pre-trial.
 {¶ 20} Appellants' second assignment of error is likewise without merit.
 {¶ 21} Appellants assert in their third assignment of error that the trial court erred in failing to give the jury instructions on negligence per se in light of our previous decision in Spencer v. Lakeview School District, 11th Dist. No. 2002-T-0175, 2004-Ohio-5303. ("Spencer I") Appellants argue that the jury should have been charged with a negligence per se instruction such that in the event they found that a student possessed a prescription medication on school grounds that said possession was a direct violation of the school's written policy regarding the same and therefore constituted negligence per se.
 {¶ 22} First, it is important to note that in our previous review of Spencer I, we were only determining whether a genuine issue of material fact existed so as to surpass the summary judgment hurdle. Id. In that case, after discussing the evidence presented at that time, we stated "appellants have presented evidence sufficient to create a genuine issue of material fact as to whether employees of the school board were negligent." Id. at 24.
 {¶ 23} In Spencer I and in the trial of this matter, the evidence showed that the appellee's handbook referenced a policy in regards to medications. The policy reads: "Parents or legal guardians must bring the prescription medicine to the office. Students are not to bring the medicine to school themselves." Appellants have based their third assignment of error on our analysis from Spencer I wherein we stated that "[o]bviously if a student brings an inhaler to school, he is violating the policy." Id. at ¶ 34. By finding a direct correlation to a student bringing an inhaler to school and a student self-medicating with that inhaler while at school, appellants have interpreted that we meant to set a negligence per se standard in regards to a perceived violation of that policy. Appellants have misplaced their reliance.
 {¶ 24} The language in Spencer I regarding a correlation between the policy and the self-medication must be viewed under the totality of the circumstances; that is our limited initial review in regards to a premature grant of summary judgment. Clearly, this court was not setting any standard in Spencer I,
rather as is stated repetitively throughout the decision, we were merely acknowledging that genuine issues of material facts existed which precluded a proper grant of summary judgment.
 {¶ 25} Notwithstanding our holding in Spencer I and the appellants' faulty interpretation, appellants' third assignment of error remains without merit. Negligence per se "* * * is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required." Swoboda v.Brown (1935), 129 Ohio St. 512, 522. The Supreme Court of Ohio has examined the issue between setting a negligence per se standard as a result of a violation of a statute versus a violation of an administrative rule or other guideline. Chambersv. St. Mary's School (1998) 82 Ohio St.3d 563. The Court determined that only legislative enactments can form the basis for a negligence per se standard. Id. at 568. Although appellants attempt to bridge this gap by referencing R.C. 3313.713 which directs school boards to adopt policies in regards to administration of medication to students on school property; this divide cannot be conquered. R.C. 3313.713 is merely a legislative directive and is not the actual language which appellants claim has been violated in this case.
 {¶ 26} Besides not being a legislative enactment, the handbook proferred by appellants as setting the negligence per se standard did not provide specific prohibitory language on which to form the basis for a negligence per se standard. Hurst v.Ohio Dept. Rehabilitation and Correction (1995),72 Ohio St.3d 325. There was testimony at the trial by Mr. Robert Wilson, principal, who stated there was an unwritten policy that allowed students requiring the aid of inhalers for asthma purposes to carry those instruments on their person. Mr. Wilson also testified that it was the teacher's discretion as to when to leave a sick student alone. Clearly, there was more than one issue to evaluate when determining the negligence portion of this case. "If the jury must determine negligence from a consideration of several facts and circumstances, then negligence per se is inapplicable. Id. at 327.
 {¶ 27} Appellants' third assignment of error is without merit.
 {¶ 28} Appellants also argue in their fourth assignment of error that the trial court erred by precluding the impeachment of the appellee's expert witness. During the jury trial, appellees called Dr. Robert Mills to testify as an expert as to the circumstances surrounding Matthew's death. Dr. Mills testified that Matthew's death as a result of a condition previously only recognized as "mild asthma" was a "one in a million." Dr. Mills reiterated this unfortunate and yet unlikely death as being so rare that it was not possible that anyone, even medical professionals, could have foreseen his hastened death. On cross-examination, counsel for appellants asked the doctor if Matthew's case, as being a one in a million, was similar to that of Rashidi Wheeler. The doctor agreed that it was similar to the death of Rashidi Wheeler. At that point, appellants' counsel was precluded by the trial court from a line of questioning involving similarities and differences between the circumstances surrounding the death of Rashidi Wheeler as compared to the death of Matthew. Appellants also argue that the trial court erred in this same vein by prohibiting appellants from calling a rebuttal witness to expound on the differences between Rashidi Wheeler's death and Matthew's death.
 {¶ 29} Once again, a decision regarding the relevancy of evidence is a decision that will not be disturbed absent an abuse of discretion. See, Sage, supra. Therefore, our review of this assignment of error is limited to whether or not the trial court judge acted in a manner that was "unreasonable, unconscionable or arbitrary" when he limited the line of questioning on Rashidi Wheeler. See, Ruwe, supra at 61.
 {¶ 30} The trial court explained its decision to limit the cross-examination of Dr. Mills: "It is something that you brought up in cross examination that doesn't deal with whether or not the standard of care in this case was met, whether or not there was proximate cause in this case or not, it's a secondary issue in some other case. . . ." We agree.
 {¶ 31} It is important to note that the mention of Rashidi Wheeler's death was initiated by appellants' counsel. It is not something on which Dr. Mills relied when providing his opinion on the circumstances surrounding Matthew's death. Prior to the question posed during cross-exam by appellants' counsel, there was no mention of Rashidi Wheeler in the trial transcript. Appellants' characterization of the testimony of Dr. Mills as "strongly" asserting that Rashidi Wheeler and Matthew Spencer were so similarly situated is not supported by the testimony at trial. Dr. Mills never mentioned Rashidi Wheeler in his direct examination, when proferring his opinion or in the trial at all until the appellants prompted him to make the correlation.
 {¶ 32} The scope of the cross-examination questions permitted is the sole discretion of the trial court judge. Calderon v.Sharkey (1982), 70 Ohio St.2d 218, 222. It is well-founded law in Ohio that matters that are secondary to an expert's opinion are considered collateral and are therefore subject to proper exclusion. Kent v. State (1884), 42 Ohio St. 426, 434. This application of law supports both the restriction on the cross-examination and the constraint on the presentation of a rebuttal witness in this case. We cannot find that the trial court's prohibition on the line of questioning regarding this issue and the trial court's decision to limit any rebuttal witnesses was an abuse of discretion.
 {¶ 33} Appellants' fourth assignment of error is without merit.
 {¶ 34} Appellants' final assignment of error asserts that the trial court erred by precluding evidence admissible under the business exception to the hearsay rule. Evidence Rule 803(6) addresses the admissibility of business records as an exception to the general hearsay rule:
 {¶ 35} "Records of regularly conducted activity: A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 36} "Whether to admit a business record into evidence pursuant to Evidence Rule 803 is a decision within the sound discretion of the trial court, which will not be disturbed on appeal unless an abuse of discretion can be shown." State v.Myers, 153 Ohio App.3d 547, 2003-Ohio-4135, ¶ 58. The trial court went to great lengths to determine whether the record (the notes of the nurse regarding Matthew's death and circumstances) was admissible under the business records exception or not.
 {¶ 37} The trial court held an in-camera hearing regarding the specific information contained within the document and the sources from whom that information came. During that in-camera hearing, the witness, Nurse Tomsich, testified that the information contained within the record was drawn from two sources: Mr. Terlecky (the gym teacher) and the orthopedic class nurses. She could not identify from whom she received the information specifically. At that point and after much discussion between counsel and the court, the court opined:
 {¶ 38} "In any business record, there could be information contained therein that could be hearsay unless there is an exception to the hearsay rule. . . . [b]ut what hasn't been established is the information that, I don't think is uncontested, would have initially come from Mr. Terlecky and that what was written in the business record came from somebody else, which is some other nurse, which would make it hearsay within hearsay. . . . the reason they call that hearsay within hearsay and not admissible is because . . . you don't know exactly what was said from the first person to the second person who relayed it to the third person."
 {¶ 39} In other words, it is the final element of Evidence Rule 803(6) regarding trustworthiness that was not met. The trial court's analysis of the document in question accurately states the law on the subject of hearsay contained within business records. Schmitt v. Doehler Die Casting Co. (1944),143 Ohio St. 421, 425. The document was excluded as evidence in this case because Nurse Tomsich could not testify as to which person specifically gave her what information. It is axiomatic that the only person with the actual knowledge of Matthew's request and physical condition on the day of his death was the gym teacher (and perhaps other students in the class). However, the nurse received information from not only Mr. Terlecky, but also the nurses who were not present at the time of Matthew's request. The appellants' argument is circular in its reasoning that because Mr. Terlecky was the only person with this first-hand knowledge, then it must have been he who provided the same to Nurse Tomsich. That is not true. Much as in the old childhood game of "telephone," Mr. Terlecky could have relayed information to the other nurses who then relayed their perception of Terlecky's account to Nurse Tomsich. It is precisely this "telephone" chain of communication which the hearsay rule means to exclude due to its lack of reliability.
 {¶ 40} The trial court's decision to exclude the business record due to the hearsay contained within was well within the trial court's discretion and should not be overturned.
 {¶ 41} Appellants' fifth assignment of error is without merit.
 {¶ 42} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
Ford, P.J., concurs.
O'Toole, J., concurs in judgment only.