| | |
|---|---|
| ESTATE OF REAGAN TOKES | Case No. 2018-00846JD |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>DECISION</u> |
| DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Before the court is a Civ.R. 12(B)(6) motion filed on June 15, 2018, by defendant Department of Rehabilitation and Correction (DRC) wherein DRC moves the court to dismiss plaintiff's complaint. Plaintiff Estate of Reagan Tokes (the Estate) opposes DRC's Civ.R. 12(B)(6) motion. The matter is fully briefed and is before the court for decision.

## I. <u>Introduction</u>

{¶2} This wrongful-death case stems from the death of Reagan Tokes by Brian Golsby, who has been convicted in an Ohio common pleas court for murdering Tokes and sentenced to prison. DRC has stated in support of its present motion: "The kidnapping, assault and murder of Reagan Tokes was a horrible, evil, unspeakable act." DRC's Civ.R. 12(B)(6) motion raises whether the Estate's complaint sets forth a claim upon which relief may be granted. The court is cognizant of the tragedy suffered by Reagan Tokes, Reagan Tokes's family, and others who have been affected by the murder of Tokes.

## II. <u>Background</u>

{¶3} On May 21, 2018, the Estate, by its administrator Gregory Utter, brought a wrongful-death action under R.C. 2125.01 et seq. and a "survivor's action" under

R.C. 2305.21 against DRC.  According to the Estate, Reagan Tokes "was murdered in Columbus, Ohio by Brian Golsby on February 8, 2017."  (Complaint, ¶ 3.)  The Estate asserts in its complaint that DRC acted negligently following Golsby's release from prison in November 2016 after Golsby served a six-year sentence for robbery and attempted rape.  The Estate seeks a determination that DRC is liable for Tokes's death.

{¶4} According to the Estate, following Golsby's release from prison, Golsby was on mandatory post-release control and, during this time, Golsby was subject to supervision and monitoring by the Ohio Adult Parole Authority (APA).  The Estate asserts that, although Golsby was sanctioned twice in December 2016 for violating terms of his release and Golsby was later sanctioned for violating a term of his release in January 2017 (Complaint, ¶ 25-27), Golsby was not arrested or put under more restrictive conditions.  And, according to the Estate, in late January 2017 and early February 2017, Golsby engaged in a "crime wave" in Columbus, Ohio, where he committed multiple crimes.  With respect to Reagan Tokes, the Estate asserts that, on February 8, 2017, Golsby forcibly abducted Tokes after she left work and Golsby forced Tokes to withdraw money from ATMs.  According to the Estate, the car containing Golsby and Tokes entered a metro park, where Golsby raped and murdered Tokes. The Estate asserts that Golsby was arrested, charged with several crimes relative to his actions against Tokes, convicted, and sentenced to life imprisonment without the possibility of parole.  (Complaint, ¶ 48-49.)  The Estate seeks compensatory damages in an amount to be determined at trial, a trial by jury, and other relief as is just and proper. (Complaint.)

## III. DRC's motion to dismiss

{¶5} On June 15, 2018, DRC moved the court to dismiss the Estate's complaint pursuant to Civ.R. 12(B)(6), urging that, under R.C. 2743.02(A)(3), DRC is not liable for the performance of its public duties, and that general tort law principles preclude a finding that DRC should be held liable for the criminal acts of Golsby.

{¶6} In opposition, the Estate has asserted that it has met its pleading burden under Civ.R. 8(A); that DRC was under a duty to exercise reasonable care to protect Tokes when DRC took charge of Golsby and DRC knew or should have known that Golsby was likely to cause physical harm to others if not controlled; that immunities contained in R.C. 2743.01(E)(1) are not applicable under the allegations in the complaint; and that a motion to dismiss should not be granted as the complaint's allegations assert DRC's failure to comply with obligations under R.C. 2967.26 that are not subject to sovereign immunity or "public duty" defense. And, according to the Estate, a motion to dismiss may not be granted on grounds that DRC was engaged in "law enforcement," "licensing," "supervision," or "monitoring" for the reason that "these terms as determinants of immunity are void for vagueness." The Estate contends that a motion to dismiss "should not be granted on the basis of a claim of governmental immunities as set forth in R.C. 2743.02(A)(3) and R.C. 2743.01(E)(1) for the reason that those immunities are unconstitutional in violation of Ohio Constitution Section 16, Article I" and that a motion to dismiss "should not be granted where the complaint alleges that the third party/offender was on post release control, where the defendant agency had established a curfew requirement, where the defendant agency had the power to violate the offender, and was negligent in not violating and arresting the offender for multiple curfew violations prior to the offender murdering the plaintiff [sic]." (Memorandum in Opposition, 16, 20.)

{¶7} In reply, DRC maintains that Golsby was not released pursuant to R.C. 2967.26, as the Estate indicates in its response, and that there was no statutory duty to confine Golsby after he completed his sentence in 2016. DRC also maintains that the "public duty rule" applies to the performance and non-performance of a public duty and that the public duty rule contained in R.C. 2743.02(A)(3), including the definition of public duty in R.C. 2743.01(E), is constitutional.

## IV. <u>Law and Analysis</u>

### A. Standard of Review

{¶8} Civ.R. 12(B)(6) permits a party to move a court to dismiss a complaint for failure to state a claim upon which relief may be granted. According to Civ.R. 12, every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, "shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *." In *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), the Supreme Court of Ohio explained that a motion to dismiss for failure to state a claim upon which relief can be granted "is procedural and tests the sufficiency of the complaint." And in *Coleman v. Columbus State Community College*, 2015-Ohio-4685, 49 N.E.3d 832, ¶ 6 (10th Dist.), the Tenth District Court of Appeals stated:

> In ruling on a motion to dismiss, pursuant to Civ.R. 12(B)(6), the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). The dismissal of a complaint for failure to state a claim is proper when it appears, beyond doubt, that the plaintiff can prove no set of facts entitling him to relief. *Celeste v. Wiseco Piston*, 151 Ohio App.3d 554, 2003-Ohio-703, ¶ 12, 784 N.E.2d 1198 (11th Dist.).

Thus, by DRC's Civ.R. 12(B)(6) motion, DRC asks the court to determine whether, after construing the Estate's complaint in a light most favorable to the Estate, presuming that all factual allegations in the complaint are true, and making all reasonable inferences in favor of the Estate, it appears beyond doubt, that the Estate can prove no set of facts entitling it to relief.

## B. Analysis

{¶9} The state maintains that the public-duty doctrine precludes a finding that DRC is liable under the circumstances of this case.  The public-duty doctrine, also termed public-duty rule, is defined as the "rule that a governmental entity * * * cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's or employee's breach of a duty owed to the general public rather than to the individual plaintiff." *Black's Law Dictionary* 1424 (10th Ed.2014).  The Supreme Court of Ohio has explained that the public-duty rule originated in English common law.  *Hurst v. State Dept. of Rehab. & Correction*, 72 Ohio St.3d 325, 329, 650 N.E.2d 104 (1995), overruled to the extent inconsistent with *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018.  As stated in *Hurst*, the public-duty rule "is used to determine the first element of negligence, the existence of a duty on the part of the state. If the duty owed is general in nature, the wrong created by its breach is to the public in general and, therefore, not individually actionable."  And in *Swart v. Ohio Dept. of Rehab. & Correction*, 133 Ohio App.3d 420, 423, 728 N.E.2d 428 (10th Dist.1999), the Tenth District Court of Appeals stated that the public-duty rule "applies to uniquely governmental functions and, unless avoided by operation of the 'special duty' exception, precludes the establishment of the duty element of a negligence action."

{¶10} In *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, the Supreme Court of Ohio addressed the applicability of the public-duty doctrine in negligence suits against the state.  The *Wallace* court held:

> The public-duty rule is incompatible with R.C. 2743.02(A)(1)'s express language requiring that the state's liability in the Court of Claims be determined "in accordance with the same rules of law applicable to suits between private parties." In negligence suits against the state, the Court of Claims must determine the existence of a legal duty using conventional tort principles that would be applicable if the defendant were a private individual or entity. (*Hurst v. Ohio Dept. of Rehab. & Corr.* [1995], 72 Ohio St.3d 325, 650 N.E.2d 104, and *Anderson v. Ohio Dept. of Ins.* [1991], 58 Ohio St.3d 215, 569 N.E.2d 1042, overruled to the extent inconsistent

herewith; *Sawicki v. Ottawa Hills* [1988], 37 Ohio St.3d 222, 525 N.E.2d 468, distinguished.)

*Wallace* at paragraph one of the syllabus. And in *Wallace*, the court stated:

> [N]o matter what considerations of policy support the *judicial* application of the public-duty rule, we must remember that R.C. Chapter 2743 has *legislatively* set forth the public policy of this state. That policy, expressed in R.C. 2743.02(A)(1), is to allow suits against the state according to the same rules as between private parties, "except that the determination of liability is subject to the *limitations set forth in this chapter.*" (Emphasis added.) As we have stated previously, the public-duty rule is neither "set forth" in R.C. Chapter 2743 nor a rule of law applicable to suits between private parties. It is inappropriate for the court to engraft the public-duty rule as an additional limitation on liability that the General Assembly has not provided. If the public-duty rule is to become a rule of substantive law applicable to suits in the Court of Claims, it is the General Assembly—the ultimate arbiter of public policy—that should make it so by way of legislation. It is not this court's role to apply a judicially created doctrine when faced with statutory language that cuts *against* its applicability.

(Emphasis sic.) *Wallace* at ¶ 33.

{¶11} Two years after the Supreme Court of Ohio issued *Wallace*, in Sub.H.B.No 316, 150 Laws of Ohio, Part IV, 5438, 5444-5446, the General Assembly enacted R.C. 2743.01(E) (defining the term "public duty" as used in R.C. Chapter 2743) and R.C. 2743.02(A)(3) (establishing, subject to exception, immunity for the performance or nonperformance of a public duty). R.C. 2743.02(A)(3) provides:

> (a) Except as provided in division (A)(3)(b) of this section, the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state.

> (b) The state immunity provided in division (A)(3)(a) of this section does not apply to any action of the state under circumstances in which a special relationship can be established between the state and an injured

party.  A special relationship under this division is demonstrated if all of the following elements exist:

(i) An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

(ii) Knowledge on the part of the state's agents that inaction of the state could lead to harm;

(iii) Some form of direct contact between the state's agents and the injured party;

(iv) The injured party's justifiable reliance on the state's affirmative undertaking.

For purposes of R.C. 2743.02(A)(3), a "public duty" "includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: (a) Permitting, certifying, licensing, inspecting, investigating, *supervising * * *.*" (Emphasis added.)  R.C. 2743.01(E)(1).

{¶12} The Estate has asserted that Golsby was subject to supervision and monitoring by the APA (Complaint, ¶ 11).  According to R.C. 5149.02, the APA is an entity created in the division of parole and community services of DRC at bureau level.  Because the Estate has asserted that Golsby was subject to supervision by the APA (an entity created within DRC), whether DRC is immune from liability based on its performance or nonperformance of a public duty—i.e., supervising Golsby—is implicated.

{¶13} In this instance, unless the Estate pleads sufficient facts to establish a special relationship between DRC and Tokes, DRC is immune from liability for its performance or nonperformance of a public duty—i.e., for its supervising of Golsby following Golsby's release from prison.  *See Rooney v. Ohio State Hwy. Patrol*, 2017-Ohio-1123, 87 N.E.3d 777, ¶ 16 (10th Dist.) ("Unless Dr. Rooney pled sufficient facts to overcome the state's R.C. 2743.02(A)(3)(a) immunity to suit, the State of Ohio is not

liable in a civil action for negligence based on the performance or nonperformance of a 'public duty,' * * *. And unless it can be demonstrated that there exists a 'special relationship' according to the four-part test set forth in R.C. 2743.02(A)(3)(b) between the State and the injured party, immunity bars recovery").  For the Estate to plead sufficient facts to establish that Tokes had a special relationship with DRC in accordance with R.C. 2743.02(A)(3)(b)(i)-(iv), the Estate is required to plead sufficient facts alleging: (i) an assumption by DRC, by means of promises or actions, of an affirmative duty to act on Reagan Tokes's behalf, (ii) knowledge on the part of DRC through its agents that inaction of DRC could lead to harm; (iii) some form of direct contact between DRC's agents and Reagan Tokes, and (iv) Reagan Tokes's justifiable reliance on DRC's affirmative undertaking.

{¶14} A review of the Estate's complaint discloses that the Estate has alleged that the "NISRE/Exit Program by contracting with the D.R.C. as a 'facility for offenders released from prison,' and thereby obligating itself by contract and regulation to monitor the resident offenders and report unusual incidents, established a 'special relationship' with the public at large."  Such 'special relationship' obligated the NISRE/Exit Program to exercise ordinary care in protecting members of the public from violent crimes, including murder and rape." (Complaint, ¶ 51.)  Construing the allegations in paragraph 51 in a light most favorable to the Estate, presuming that the factual allegations are true, and making all reasonable inferences in favor of the Estate, the court does not find that in paragraph 51 the Estate has pleaded sufficient facts to establish the elements contained in R.C. 2743.02(A)(3)(b)(i)-(iv) to establish a special relationship existed between DRC and Reagan Tokes.  Rather, by the allegations contained in paragraph 51 of the Estate's complaint, the Estate alleges that the NISRE/Exit Program established a "special relationship" with the public at large.  And, based on the court's review of the Estate's entire complaint, the court does not find the Estate has pleaded any facts that establish the first requirement of any negligence action, *i.e.*, the existence

of a duty to the plaintiff—the breach of which offers the possibility of a cause of action. The only duty established is a "public duty" running to the public at large.

{¶15} The Estate nonetheless contends that immunity should not apply in this case because, according to the Estate, governmental immunities under R.C. 2743.02(A)(3) and 2743.01(E)(1) are unconstitutional and violate Article I, Section 16, Ohio Constitution, and that the terms "law enforcement," "licensing," "supervision," or "monitoring" in R.C. 2743.01(E)(1) as determinants of immunity are void because they are unconstitutionally vague. Whether R.C. 2743.02(A)(3) is constitutional and whether certain terms contained in R.C. 2743.01(E)(1) are constitutional are issues that are not cognizable in this court because the Tenth District Court of Appeals has determined that constitutional claims are not actionable in this court. *See White v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 12AP-927, 2013-Ohio-4208, ¶ 17; *Wassenaar v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-712, 07AP-772, 2008-Ohio-1220, ¶ 28. *See also White v. Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 92AP-1229, 1992 Ohio App. LEXIS 6749, at *2 (Dec. 22, 1992) ("To the extent plaintiff's allegations are meant to assert violations of his constitutional rights under the Ohio or United States Constitutions, the Court of Claims lacks jurisdiction").

{¶16} The court's conclusion that the public-duty doctrine applies in this case does not constitute a sea change under Ohio law. Rather, such a conclusion is consistent with case law that preceded the enactment of Sub.H.B.No 316, 150 Laws of Ohio, Part IV, 5438, 5444-5446 and case law that has followed the enactment of Sub. H.B.No. 316. For example, in 1995 in *Hurst v. State Dept. of Rehab. & Correction*, 72 Ohio St.3d 325, 650 N.E.2d 104 (1995), overruled to the extent inconsistent with *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, the Ohio Supreme Court reversed an appellate court's judgment that reversed this court's application of the public-duty doctrine. In *Hurst*, the executor of the estate of Minnie Ruth Hurst sued the Ohio Department of Rehabilitation and Correction, alleging

claims of wrongful death, negligence, and negligence per se against the department for its delay in processing a report concerning a parolee. The *Hurst* court noted that the appellate court had expressed reservations about the continued vitality of the public-duty rule in light of two decisions that had been issued by the Ohio Supreme Court. However, in reversing the appellate court, the *Hurst* court stated: "Because appellee has failed to establish the existence of a special duty owed the decedent by the state, the public duty rule applies to bar liability on the part of the Adult Parole Authority." *Hurst* at 329.

{¶17} A year after *Hurst*, in *Bonds v. Dept. of Rehab. & Correction*, 116 Ohio App.3d 144, 158-159, 687 N.E.2d 300 (10th Dist.1996), the Tenth District Court of Appeals affirmed this court's determination that the Department of Rehabilitation and Correction owed the appellant, Beulah Bonds, no duty and that the department correctly calculated a prisoner's release date. In that case, the department released an inmate from prison on February 21, 1992. About a month later the released prisoner burglarized Bonds's home and raped Bonds. Bonds alleged that the department was negligent because the department miscalculated the prisoner's release date and the department released the prisoner, despite having received a detainer from another state. In *Bonds*, the Tenth District Court of Appeals stated: "Because [the department] did not owe appellant a special duty within the meaning of the public duty rule, [the department] did not owe appellant any duty actionable under ordinary principles of negligence." *Bonds* at 159.

{¶18} Three years after *Bonds*, in *Swart v. Ohio Dept. of Rehab. & Correction*, 133 Ohio App.3d 420, 728 N.E.2d 428 (10th Dist.1999) (affirming this court's summary judgment in favor of the Ohio Department of Rehabilitation), the Tenth District Court of Appeals upheld this court's determination that a duty owed by Ohio Department of Rehabilitation was a public duty and that the appellants in that case could not show that

the department owed Clara Stewart—the victim of a murder by a parolee—a special duty.

{¶19} Additionally, after the General Assembly enacted Sub.H.B.No 316, 150 Laws of Ohio, Part IV, 5438, 5444-544 (codifying the public-duty doctrine in R.C. Chapter 2743), in *Rudd v. Ohio State Hwy. Patrol*, 2016-Ohio-8263, 78 N.E.3d 273 (10th Dist.), the Tenth District Court of Appeals applied the pubic-duty provisions contained in R.C. 2743.01(E)(1)(a) and 2743.02(A)(3) in affirming this court's dismissal based on Civ.R. 12(B)(6).  The *Rudd* court found that this court did not err in finding that an amended complaint failed to state a claim upon which relief could be granted.  In that case, the plaintiffs had contended that two highway patrol employees acted negligently in various ways and failed to apprehend two fugitive murderers, which resulted in the murderers being left at large to shoot and seriously injure one of the plaintiffs.

{¶20} And a year after *Rudd*, in *Rooney v. Ohio State Hwy. Patrol*, 2017-Ohio-1123, 87 N.E.3d 777, ¶ 1 (10th Dist.), the Tenth District Court of Appeals determined that this court properly dismissed an administrator's complaint against the Ohio Highway Patrol pursuant to Civ.R. 12(B)(6) for failure to overcome the patrol's public-duty immunity granted by R.C. 2743.02(A)(3).

{¶21} Moreover, the court's conclusion that DRC owed no duty in this instance is wholly consistent with the general principle that, absent a special relationship, there is no duty to control the conduct of a third person as to prevent the third person from causing physical harm to another.  *See* 2 Restatement of the Law, Torts 2d, Sections 314 and 315 (1965); *Gelbman v. Second Natl. Bank*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262 (1984) ("Both Sections 314 and 315 [of the Restatement of the Law, Torts 2d] articulate the general rules of the duties imposed on third parties. Thus, unless a special relationship between defendant-owner and plaintiff-third party is extant by statute or judicial determination, no duty may be imposed"); *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989) ("Ordinarily, there is no

duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection").

{¶22} Additionally, the court finds persuasive DRC's contention that the Estate's suggestion in its memorandum in opposition that Golsby was released from prison under R.C. 2967.26 (transitional control program) is inconsistent with the Estate's factual allegation in paragraph 11 of the complaint wherein the Estate alleges that Golsby "was on parole, that is, mandatory post-release control pursuant to R.C. 2929.19(B)(3)(c),(d) and (e) for five years" following Golsby's release from prison in November 2016.  *See generally* R.C. 2967.28 (effective September 13, 2016) (establishing a period of post-release control for certain offenders, sanctions, and proceedings upon violation).  Here, according to the Estate's allegation, Golsby completed his prison term in November 2016.  Based on the Estate's allegation, after Golsby was released from prison, Golsby appears to have been a "releasee" for purposes of R.C. Chapter 2967.  *See* R.C. 2967.01(J) (effective September 22, 2000) (defining "releasee," as used in R.C. Chapter 2967, to mean "an inmate who has been released from confinement pursuant to section 2967.28 of the Revised Code under a period of post-release control that includes one or more post-release control sanctions")*.*  And based on the Estate's allegation that Golsby was on post-release control when he committed the crimes against Reagan Tokes, it does not appear to the court that DRC had a duty to confine Golsby, absent a hearing regarding alleged violations of post-release control sanctions.  *See, e.g.*, R.C. 2967.28(D)(3) (effective September 13, 2016) (providing that the parole board or, pursuant to an agreement under R.C. 2967.29, a court may hold a hearing on any alleged violation by a release of a post-release control sanction or any conditions described in R.C. 2967.131(A) that are imposed upon the releasee).

{¶23} Accordingly, construing the Estate's complaint in a light most favorable to the Estate, presuming that all factual allegations in the complaint are true, and making all reasonable inferences in favor of the Estate, it appears beyond doubt that the Estate can prove no set of facts entitling it to relief with respect to DRC's performance of a public duty. Because the Estate has failed to plead sufficient facts to overcome the state's R.C. 2743.02(A)(3)(a) immunity to suit, the court determines that dismissal pursuant to Civ.R. 12(B)(6) is required.

## V. Conclusion

{¶24} For reasons set forth above, the court holds that after construing the Estate's complaint in a light most favorable to the Estate, presuming that all factual allegations in the complaint are true, and making all reasonable inferences in favor of the Estate, it appears beyond doubt that the Estate can prove no set of facts entitling it to relief. The court concludes that DRC's Civ.R. 12(B)(6) motion should be granted and that this case should be dismissed.

PATRICK M. MCGRATH
Judge

[Cite as *Tokes v. Dept. of Rehab. & Corr.*, 2018-Ohio-4149.]

| ESTATE OF REAGAN TOKES | Case No. 2018-00846JD |
|---|---|
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶25} For the reasons set forth in the decision filed concurrently herewith, the court GRANTS defendant's Civ.R. 12(B)(6) motion filed on June 15, 2018. Plaintiff's case is DISMISSED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

**Filed September 4, 2018**
**Sent to S.C. Reporter 10/12/18**