David E. EATON, Plaintiff–Appellant,

v.

CONTINENTAL GENERAL INSURANCE COMPANY; Western–Southern Life Insurance; Labone, Inc.; John Doe; Equifax/PMI; Choicepoint Services Inc., Defendants–Appellees.

No. 01–3611.

United States Court of Appeals, Sixth Circuit.

March 4, 2003.

Before BOGGS and COLE, Circuit Judges; and BATTANI, District Judge.[*]

PER CURIAM.

David Eaton appeals the district court's grant of defendants' motion for summary judgment in this case against Continental General Insurance Company (Continental), Western–Southern Life Insurance Company (Western), LabOne Inc. (LabOne), John Doe, and Equifax/PMI, ChoicePoint Services, Inc., seeking money damages. Eaton alleged various theories of negligence, breach of contract, and negligent or intentional infliction of emotional distress arising from the failure of the defendants to notify him that he tested positive for the HIV virus in a test administered as part of an application for disability insurance. The district court found that there was no statutory or common law duty under Ohio law to report positive HIV test results, that the defendants did not have a contractual obligation to report such results, and that the defendants' failure to report such results did not support a claim for negligent or intentional infliction of emotional distress. On appeal Eaton argues that the district court failed to construe the evidence in his favor, as required by Fed. R. Civ. P. 56, and incorrectly interpreted the law of Ohio.

---

[*] The Honorable Marianne O. Battani, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I

In May 1997, David Eaton applied to Continental for disability insurance. The application was taken by Adam Balduff, an agent for Western, under an agreement whereby agents from Western were permitted to solicit applications for Continental. Balduff told Eaton that in order to obtain an insurance policy, Continental required him to take an HIV test. Balduff further explained that someone would come from a lab company to administer the test, as part of a physical exam.

A few days after Balduff's visit, K.C. Werhoff, a paramedical examiner working for Equifax/PMI, went to Eaton's home and drew blood and urine samples. Eaton alleges that Werhoff informed him that if he tested positive for the HIV virus, he would be notified. Eaton also filled out two forms that referred to the HIV test he was taking. The first was a "Notice and Consent for Testing" form, which advised Eaton that his test results would be reported by the laboratory to the insurer; and that if the results were positive, the insurer "may disclose" such results to Eaton. The second form filled out by Eaton, titled an "Informed Consent Form," specifically stated that "[y]ou will be notified of an abnormal (positive) test result if you indicate that you desire a positive result be made known to you." Eaton indicated on the form that he wanted to be informed of a positive result, and provided an address to which the test results should be sent.

Equifax/PMI, the relevant part of which has since been spun off and is now known as ChoicePoint Services Inc. (ChoicePoint), sent the blood sample to LabOne for analysis. LabOne is a company authorized to conduct tests for Continental. The test results revealed that Eaton was HIV-positive. On May 16, 1997, LabOne sent the test results to Continental and to the Kansas Department of Heath on a no-name basis, as required by Kansas state law.

*See* KAN. STAT. ANN. § 65–6002 (1997) (amended in 1999 to require the identity of the person tested to be reported).

In the meantime, Continental discovered that Eaton already had disability insurance through his employer. Under Continental's underwriting guidelines, Eaton's existing insurance rendered him ineligible for further coverage. Accordingly, Eaton's file was sent to the "word processing" department, for the specific purpose of preparing a formal declination letter. Continental alleges that it did not receive the test results from LabOne, reflecting that Eaton was HIV positive, until after it had sent Eaton's file to the "word processing" department, and as a result Continental did not follow its customary practice of notifying applicants of a positive test result.

In August 1998, Eaton's family doctor told him that he was HIV-positive. After many unsuccessful attempts to obtain the results of his first test from Continental, Eaton retained an attorney. In October 1998, Continental received a letter from Eaton's attorney, requesting the test results for Eaton. Continental complied with the request and provided the medical report to Eaton's attorney.

On August 11, 1999, Eaton sued Continental and Adam L. Balduff in state court. Continental and Balduff removed the case to federal district court pursuant to 28 U.S.C. § 1332. Eaton later amended his complaint to drop Balduff as a defendant and to include Western, LabOne, and John Doe A/K/A Equifax/PMI, which has since been replaced with ChoicePoint. Cross motions for summary judgment were filed by all parties and the district court granted the defendants' motions. Eaton appealed the decision in favor of Continental.

## II

We review the district court's grant of summary judgment *de novo*. *See Owens*

*Corning v. National Union Fire Ins.*, 257 F.3d 484, 490–91 (6th Cir.2001). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c); *see also Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996).

■ Although Eaton points to evidence that contradicts various factual assertions made by the defendants in relation to his original claims of ordinary negligence, breach of contract, and negligent or intentional infliction of emotional distress, he presents no argument or analysis regarding these claims in his brief, focusing entirely on his claim of negligence *per se*. Therefore, we consider these arguments to be abandoned on appeal and restrict ourselves to considering the merit of only one claim: negligence *per se*. *See, e.g., Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 376 (6th Cir.1999) (holding that generally arguments not briefed on appeal are deemed abandoned or waived).

Eaton contends that Ohio's law provides a basis for a claim of negligence *per se*. Eaton argues that the Ohio Revised Code requires insurers that conduct HIV tests to notify applicants of the results if they state they wish to be notified, by way of the procedures stated in the administrative code. However, under Ohio law, a violation of an administrative rule does not constitute negligence *per se* and furthermore, the failure to notify Eaton of the results of his HIV test is not the kind of event that the statute or regulation was designed to prevent. Therefore, Eaton's claim for negligence *per se* must fail.

The Ohio Supreme Court has stated that when a "legislative enactment imposes upon any person a specific duty for the protection of others and his neglect to perform that duty proximately results in injury to such another, he is negligent per se or as a matter of law." *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440, 440–41 (Ohio 1954). *See also Hurst v. Ohio Dept. of Rehab. & Corr.,* 72 Ohio St.3d 325, 650 N.E.2d 104, 106 (Ohio 1995) (*overruled on other grounds by Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 773 N.E.2d 1018 (Ohio 2002)). Further, Ohio law provides that a claim for negligence *per se* may only arise when there exists a "positive and definite standard of care ... whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Chambers v. St. Mary's School,* 82 Ohio St.3d 563, 697 N.E.2d 198, 201 (Ohio 1998).

Eaton's contention that Ohio law imposes a specific duty on insurers to inform applicants of positive HIV test results is grounded in Section 3901.46 of the Ohio Revised Code, which provides in relevant part:

> An insurer that requests an applicant to take an HIV test shall obtain the applicant's written consent for the test and shall inform the applicant of the purpose of the test. The consent form shall include information about the tests to be performed, the confidentiality of the results, procedures for notifying the applicant of the results, and a general interpretation of test results.

O.R.C. § 3901.46(B)(1).

■ As a first step, we focus our attention on Continental and eliminate the other defendants from our analysis, since the statute in question is directed towards insurers. The Ohio Revised Code, in the paragraph preceding the provision quoted above, makes it clear that an "insurer," for purposes of this statute, is the underwriter of an "individual policy of life or sickness and accident insurance or a group policy of

life or sickness and accident insurance." O.R.C. § 3901.46(A). In this case. Eaton had applied to Continental for disability insurance and it was Continental that was considering whether to underwrite his policy. Thus the statute is addressed to Continental and only Continental has a duty to obey it, not Western, LabOne, or Choice-Point. *See Hurst,* 650 N.E.2d at 106 (holding that only if there exists a statute commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, does such violation constitutes negligence *per se* ).

■ We next consider whether Continental violated its duty under the statute, keeping in mind that the *Eisenhuth* court required that the standard of duty be "fixed and absolute" in order to constitute negligence *per se. Eisenhuth,* 119 N.E.2d at 444. Section 3901.46 of the Ohio Revised Code requires that the consent forms signed by the applicant include information about the procedures for notifying the applicant of his or her HIV test result, but does not specifically mandate that the insurer inform the applicant of a positive result. In fact, a later section of the statute states that "[a]n insurer *may* disclose the results of a positive HIV test only to the following persons: 1) The applicant...." O.R.C. § 3901.46(C) (emphasis added). The statute, therefore, makes the point that informing an applicant of his or her positive test result is within the insurer's discretion and does not place a specific duty on the insurer to inform the applicant of a positive test result. Where the duty of the defendant is "undefined, or defined only in abstract or general terms, leaving to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proved conditions and circumstances, the phrase 'negligence per se' has no application." *Eisenhuth,* 119 N.E.2d at 444.

■ Eaton points out that although the statute does not prescribe specific notification procedures, the administrative code does. Section 3901–1–49 of the Ohio Administrative Code establishes a model consent form, the form and content of which must be used by an insurer. A replica of this form was in fact given to Eaton and it states, as noted above, that "[y]ou will be notified of an abnormal (positive) test result if you indicate that you desire a positive result be made known to you." Since Eaton indicated that he wished to be informed of a positive result, Continental violated the Ohio Administrative Code. Nevertheless, under Ohio law, violating an administrative regulation does not rise to the level of negligence *per se. See Chambers,* 697 N.E.2d at 203 (reasoning that regulations are not entitled to the same respect and deference as statutory enactments for the purposes of finding a party negligent *per se* ).

Furthermore, in order to meet the requirements of negligence *per se,* Eaton's injury must be "under the contemplation of the purposes of the ordinance, which the ordinance was created to prevent." *Miller v. East Ohio Gas Co.,* 35 Ohio App. 113, 172 N.E. 300, 300–01 (Ohio Ct.App.1930). *See also Levin v. Nielsen,* 37 Ohio App.2d 29, 306 N.E.2d 173, 185 (Ohio Ct.App.1973) (citing *Miller* for the same proposition). In this case, the legislative purposes included preventing insurers from testing for HIV on a discriminatory basis and maintaining the confidentiality of an applicant's test results. *See* David L. Hobson, *A Comprehensive AIDS Bill,* 61 HEALTH L.J. OHIO 13 (1989) (noting that the bill "is intended to protect the confidentiality of HIV test results; [and] to prevent insurance companies from singling out AIDS patients for discriminatory treatment ...." (quoting Peter Pavarini, *Tackling the Crisis Over AIDS,* 61 CLEVELAND B.J.

232 (1990)). The purpose was not to provide a mechanism for notifying applicants of the results of their HIV tests, and thus, with respect to notification, Eaton was not a member of the class of persons the Ohio statute was intended to protect.

In sum, Continental is not liable under a theory of negligence *per se* since it did not have a specific duty to notify Eaton of his positive HIV test result under O.R.C. § 3901.46(B)(1), the purpose of the statute was not to prevent insurers from failing to notify applicants of positive HIV test results, and Continental's violation of Ohio's administrative regulation does not suffice to establish negligence *per se.*

### III

For the reasons given above, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.