OPINION
{¶ 1} Ira S. Cohen appeals from a judgment of the Greene County Court of Common Pleas, which granted summary judgment to G/C Contracting Corporation on whether the parties were subj ect to a mandatory arbitration provision and stayed this action pending arbitration. For the following reasons, the trial court's judgment will be reversed and the cause remanded for *Page 2 
further proceedings. .
 {¶ 2} According to Cohen's amended complaint, on September 3, 2003, Cohen, dba Ira S. Cohen Associates, sent a proposal to G/C Contracting, a company bidding on a project to construct a replacement fire station for the Beavercreek Board of Trustees. Cohen's proposal offered to fabricate and erect miscellaneous architectural steel, structural steel, joists, deck, and accessories in connection with the Beavercreek project for $193,431. Beavercreek selected G/C Contracting to be the general contractor for the fire station project, and G/C Contracting began discussions with Cohen about the steelwork aspects of the job. On October 4, 2003, G/C Contracting "gave [Cohen] the verbal go-ahead to commence work on the project."
 {¶ 3} On October 23, 2003, G/C Contracting sent Cohen a draft of a written contract to review and sign. According to Cohen, the parties did not execute the written agreement. Cohen alleged that he substantially completed all labor and furnished substantially all materials by August 8, 2004, at which time he was improperly terminated from the project. Cohen alleged that he has not been fully paid by G/C Contracting. He stated that the total contract price was $194,558 plus approximately $250,000 in agreed-upon extras.
 {¶ 4} On February 15, 2005, Cohen brought suit against G/C Contracting and others, asserting claims of breach of contract, lien foreclosure, for payment pursuant to R.C. 1311.32, unjust enrichment, fraud, bad faith, and tortious interference with a business relationship.[1]
 {¶ 5} On March 19, 2005, G/C Contracting filed a motion to dismiss and/or for a more definite statement and/or to stay. G/C Contracting asserted that the relationship between Cohen *Page 3 
and G/C Contracting was governed by a written contract, which was executed on October 20, 2003. In its motion, G/C Contracting argued that "Plaintiffs failure to attach the contract between the parties subjects the complaint to either dismissal or requires a more definite statement. The Contract that should have been attached contains a valid alternative dispute resolution clause. Once that clause is given full effect, this case should either be dismissed or stayed." G/C Contracting also argued that certain causes of action should be dismissed. G/C Contracting attached a "Contractor and Subcontractor Agreement" signed by Cohen. A preprinted portion of the Agreement stated that it was "made on" October 20, 2003.
 {¶ 6} In his memorandum in opposition to the motions, Cohen asserted that no written contract was entered into by the parties. He indicated that the alleged contract attached by G/C Contracting to its motion should have included an "Exhibit G," which contained many proposed modifications to the terms of the agreement. Cohen notes that G/C Contracting did not sign the contract, and there was no meeting of the minds as to what the written instrument would say. Cohen provided an affidavit that detailed the negotiations between Cohen and G/C Contracting and stated that no written contract was executed.
 {¶ 7} In response, G/C Contracting asserted that G/C Contracting's signature was not required for the contract to be binding on the parties. Moreover, it denied that any exhibit was attached to the contract when it was returned to G/C Contracting. It attached the affidavit of Justin Conger, Vice President of G/C Contracting, to substantiate its assertions.
 {¶ 8} On July 11, 2005, the trial court stated that "[i]t appears from the fact patter[n] of this case that alternative dispute resolution has not been exhausted and, as such, Plaintiff s claim should be pled with particularity as to why said alternative dispute resolution provisions are not *Page 4 
applicable in [s]aid contract between Plaintiff and Defendants." The court granted the motion to dismiss, stay or for more definite statement, indicating that several counts needed to be pled with more particularity.
 {¶ 9} On September 9, 2005, Cohen filed an amended complaint. Cohen specifically alleged that G/C Contracting had sent a draft written contract, which Cohen signed and returned with numerous material changes to bring the contract in line with the project specifications. Cohen attached the alleged draft "Contractor and Subcontract Agreement," which was signed by Cohen, as well as Exhibit G. G/C Contracting subsequently filed counterclaims, alleging breach of contract, breach of implied warranty, and negligent construction.
 {¶ 10} On September 27, 2005, G/C Contracting moved to dismiss Cohen's amended complaint. It argued that G/C Contracting and Cohen had either a written or an implied contract that required mandatory arbitration to resolve this dispute. G/C Contracting attached the draft "Contractor and Subcontractor Agreement" along with Exhibit G. Cohen opposed the motion, again arguing that there was no written contract between the parties and, thus, no valid and binding arbitration clause.
 {¶ 11} On February 9, 2006, the trial court converted the motion to dismiss on the issue of mandatory arbitration to a motion for summary judgment, and it provided the parties an additional period of time to supplement the record. Neither party submitted additional materials to the court.
 {¶ 12} On August 3, 2006, the court granted G/C Contracting's motion for summary judgment and it stayed the litigation pending arbitration. The court stated:
 {¶ 13} "Relevant facts of this case are as follows: G/C Contracting Corp. contracted *Page 5 
with Beavercreek Township for a construction project relating to a Beavercreek Replacement Fire Station No. 1. In October, 2003, Ira Cohen as subcontractor, contracted with G/C Contracting Corp. to provide in part: All labor, Materials, Equipment, Supervision, and Coordination forthe following: Architectural Miscellaneous Steel, Structural Stell
[sic], and Joists Per Specs Sections o5100 [sic], 05200, 05300, 05500,and 05712 . . . Plaintiff was to be paid $194,558.00. For one reason or another a dispute arose related to the contract between G/C Contracting and Ira Cohen leading to the instant lawsuit. Defendant, G/C Contracting maintains the matter should never have been filed in the common pleas court because of a[n] existing contractual agreement between the parties that sends disputes to mediation and binding arbitration. In response Plaintiff argues there was no contract because there was no meeting of the minds as to an offer and acceptance. Specifically, the parties proceeded under a verbal understanding . . ., a quote from Plaintiff,and the plans and specifications. The Court notes Plaintiff has not attached an affidavit in support to his response memorandum filed October 18, 2005, which was filed in response to Defendant's motion on the amended complaint, but has previously filed the affidavit of Ira Cohen on April 18, 2005.
 {¶ 14} "This Court need only to look to the documents filed in this case to resolve the dispute. It is clear from the four corners of theagreement that no issue of material fact exists and as such, Plaintiff was obligated by contract as to dispute resolution. On October 20, 2003, Plaintiff entered into a contract with G/C Contracting which has led to the dispute in this case. The contract specifically sets forth the agreement between the parties. Included in the contract were terms acceptable to the parties that addressed dispute resolution, to wit: section 13.7, Direct Discussion, section 13.8, Mediation, section 13.9, Arbitration. When Ira Cohen signed *Page 6 
the document he agreed to those terms. Plaintiff does maintain that the absence of Defendant's signature on the alleged contract is fatal to its existence in that there was no offer and acceptance. This is not true in this case. It is well settled that any memorandum or note of thecontract showing the important terms thereof is sufficient and that itis not necessary both parties should sign the contract if the partysought to be charged had signed the memorandum. Further, the Ohio Supreme Court has held that the lack of a signature does not necessarily make the contract unenforceable. The test in this case is whether important terms are set forth in the document and whether Plaintiff signed the document. Both questions can be answered in the affirmative.
 {¶ 15} "The contract in this case is clear on its face. The Court finds it is not necessary to go outside the four corners of the document to enforce the agreement. Therefore, Summary Judgment is GRANTED and the matter is hereby STAYED pending mandatory mediation/arbitration." (Emphasis in original) (footnotes omitted).
 {¶ 16} Cohen appeals from the grant of summary judgment on the existence of an arbitration agreement and the stay of this litigation, raising two assignment of error, which we will address together.
 {¶ 17} I. "THE TRIAL COURT ERRED BY FAILING TO CONSTRUE THE FACTS IN A SUMMARY JUDGMENT MOTION MOST STRONGLY IN FAVOR OF THE NON-MOVING PARTY."
 {¶ 18} II. "THE TRIAL COURT ERRED IN DETERMINING THAT A DOCUMENT, SIGNED BY ONLY ONE PARTY, AND SUBJECT TO CHANGES BY THAT PARTY WHICH WERE REJECTED BY THE OTHER PARTY CONSTITUTED A CONTRACT." *Page 7 
 {¶ 19} On appeal, Cohen asserts that the trial court failed to construe the evidence in the light most favorable to him, the non-moving party, and erred in concluding that he and G/C Contracting had entered into a contract which contained a mandatory arbitration clause.
 {¶ 20} "In general, when reviewing whether a trial court has properly granted or denied a motion to stay proceedings and compel arbitration, the standard of review is abuse of discretion." Holt Co. of Ohio v. OhioMachinery Co., Franklin App. No. 05AP-1280, 2007-Ohio-2870, ¶ 14. However, the trial court in this case addressed the existence of a valid arbitration agreement by means of a motion for summary judgment. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v. State Emp. Relations Bd.,78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46. Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162, 703 N.E.2d 841. Moreover, the issue of whether a valid arbitration agreement exists requires us to interpret the meaning and construction of the contract between the parties, which is a question of law that we review de novo. West v. Household Life Ins. Co., Franklin App. No. 06AP-906, 2007-Ohio-845, at ¶ 7.
 {¶ 21} Although the court treated G/C Contracting's motion as one for summary judgment, the trial court was presented with little evidence in accordance with Civ.R. 56(C). In *Page 8 
fact, neither party presented affidavits or other evidence in support of or in opposition to the pending motion. The only affidavits before the court were the affidavits of Cohen and Conger, which were filed in response to G/C Contracting's motion to dismiss Cohen's original complaint. The only authenticated copy of the Contractor and Subcontractor Agreement was attached as an exhibit to Conger's affidavit, and it did not include Exhibit G. We note, however, that G/C Contracting has agreed for purposes of the summary judgment only that Exhibit G (which it attached to its copy of the Contractor and Subcontractor Agreement that it submitted with its motion to dismiss) was provided to G/C Contracting, as Cohen asserted in his affidavit.
 {¶ 22} According to Cohen's affidavit, Cohen entered into a contract with G/C Contracting on October 4, 2003 to provide services and materials in connection with the Beavercreek fire station project. On October 23, 2003, G/C Contracting sent Cohen a draft written contract to review and sign. (Although Cohen did not attach a copy of the Contractor and Subcontractor Agreement to his affidavit, it is apparent that he was referring to the document attached to his amended complaint and to G/C Contracting's motions to dismiss.)
 {¶ 23} Section 5 of the proposed Contractor and Subcontractor Agreement identified exhibits that were incorporated by reference and made part of the agreement, as follows:
 {¶ 24} "EXHIBIT A: Subcontract Work: All Labor, Materials, Equipment, Supervision, and Coordination for the following: Architectural Miscellaneous Steel, Structural Steel, and Joists Per Specs Sections 05100,05200,05300,05500, and 05712
 {¶ 25} "EXHIBIT B: Prime agreement, Drawings, Specifications, General, Special, Supplementary, and other conditions, and addenda. *Page 9 
 {¶ 26} "EXHIBIT C: Progress Schedule as posted on site. (Attached or to follow by Contractor).
 {¶ 27} "EXHIBIT D: Alternatives and Unit Prices include dates when alternates and unit prices no longer Apply. (None applicable)
 {¶ 28} "EXHIBIT E: Insurance Provisions, Workman's Compensation. As required per Contractor agreement with Owner, and or $3,000,000.00 General Liability Bodily Injury naming G/C Contracting Corp. as additional insured.
 {¶ 29} "EXHIBIT F: Bonds, N/A
 {¶ 30} "EXHIBIT G: Subcontractor's Agreement Amendments, (Attached orto follow by Subcontractor)." (Emphasis added.)
 {¶ 31} Section 13 of the proposed written contract governed claims and disputes. Section 13.1 provided that Cohen was required to give seven days written notice of all claims, and that "[a]ll unresolved claims, disputes and other matters in question between Contractor and Subcontractor shall be resolved in the manner provided in this Agreement." Section 13.7 provided that the parties shall first endeavor to settle disputes through direct discussion. If direct discussion did not resolve the dispute, the dispute was to be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. Section 13.8. If mediation was also unsuccessful, the contract required that the dispute be resolved by arbitration. Section 13.9. The costs of mediation were to be shared equally by the parties, and the prevailing party in arbitration was entitled to recover reasonable attorneys fees, costs and expenses from the other party. Section 13.10.
 {¶ 32} Cohen averred that he prepared an Exhibit G pursuant to Section 5 of the *Page 10 
agreement, and that Exhibit G "contained a substantial number (approximately 25) changes and additions to the terms of the contract." According to the Exhibit G provided by both parties, the proposed changes included:
 {¶ 33} (1) Section 13.1 be deleted and replaced with: "`CLAIMS RELATING TO ADDITIONAL COST LEVIED AGAINST CONTRACTOR'. Subcontractor shall give Contractor written notice of all claims. Contractor shall in writing respond to Subcontractor['] s claim by issuing a change order for the additional products and or services in the form an add to contract in the amount of the claim within (3) days of Subcontractor's notice of claim: otherwise such claim shall be deemed approved as submitted and all rights of the Contractor to dispute claim are waived. Knowledge of facts giving rise to the event for which claim is made shall be deemed proprietary information of the subcontractor."
 {¶ 34} (2) Delete the following text from 13.10: "The cost of any mediation proceeding shall be shared equally by the parties participating." Insert in its place: "The cost of any mediation proceeding shall be paid wholly by contractor and shall be considered non-recoverable. This shall include all subcontractor's legal fees at a rate of (not to exceed $350.00 per hour) and for a reasonable duration such, as is necessary, for resolution of claim."
 {¶ 35} According to Cohen, he returned the draft agreement with his changes to G/C Contracting in November or December 2003. The Contractor and Subcontractor Agreement attached by the parties indicates that Cohen signed the draft contract prior to returning it. Cohen states that Ronald D. Worrell of G/C Contracting later informed him that G/C Contracting "could not agree to the changes I had made, but that they would get back to me." Cohen averred that he never heard further from G/C Contracting regarding the draft agreement "except to say *Page 11 
that it would not be an issue or impede the completion of the work." Cohen stated in this affidavit that he never entered into a written agreement with G/C Contracting "in the form submitted with Defendants' motions to dismiss," i.e., the Contractor and Subcontractor Agreement. He indicated that his business with G/C Contracting from October 4, 2003 until August 8, 2004 was pursuant to oral discussions and some written communications back and forth. Cohen further averred that he provided labor and material to G/C Contracting until approximately August 8, 2004, and that he received one partial payment for his services.
 {¶ 36} Justin Conger's affidavit did not discuss the course of negotiations between the parties. Rather, it stated that Conger personally received the Contractor and Subcontractor Agreement when Cohen hand-delivered it to G/C Contracting. Conger further stated that the Contractor and Subcontractor Agreement attached to hi s affidavit was a true and correct copy of the contract that was handed to him by Cohen. Accordingly, G/C Contracting has not presented any evidence to dispute Cohen's version of the contractual negotiations between the parties.
 {¶ 37} G/C Contracting contends that the "issue is not whether the written agreement signed by COHEN constitutes the written agreement that governs the relationship of the parties. Instead, the issue is simply whether the parties agreed to arbitrate any dispute arising between the parties." (Emphasis sic). G/C Contracting argues that the proposed contract had a mandatory arbitration provision to which Cohen had agreed. Accordingly, G/C Contracting argues that the mandatory arbitration clause applies, even assuming as true that Cohen never accepted the proposed written contract and instead offered a counteroffer. G/C Contracting argues that the resulting implied contract included a mandatory arbitration provision.
 {¶ 38} "`A contract is generally defined as a promise, or a set of promises, actionable *Page 12 
upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' Perlmuter Printing Co. v. Strome,Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus.Relations (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134." Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. In order to ascertain when and under what terms a contract has been reached, it is helpful to consider the relevant interactions chronologically. Corbin on Contracts, Vol. 1, § 2.1.
 {¶ 39} As stated above, Cohen's affidavit states that, on October 4, 2003, Cohen and G/C Contracting entered into a contract where by Cohen would perform steel work on the Beavercreek fire station project.[2]
G/C Contracting has not discussed this October 4 exchange, and it did not provide any evidence to refute Cohen's assertion. Construing Cohen's undisputed evidence in his favor, the parties, at this juncture, had entered into a contract. The basic terms of the contract were set forth in Cohen's proposal, i.e., that he perform certain steel work for the fire station project at a specified price.
 {¶ 40} After entering into a contract based on Cohen's proposal, G/C Contracting sent *Page 13 
Cohen a draft agreement — the Contractor and Subcontractor Agreement — which would have set forth the relationship between the parties in greater detail. (Although the parties refer to this as a draft contract, this document apparently was intended by G/C Contracting as a novation of the contract created on October 4, 2003.) The parties agree for purposes of summary judgment that Cohen signed this draft agreement and returned it to G/C Contracting with an Exhibit G, which was contemplated in Section 5 of the agreement. Although Cohen signed the draft agreement, the signature did not act as an acceptance, because Cohen made changes to the written proposed contract in Exhibit G. In essence, the signed agreement with Exhibit G attached constituted a counteroffer. Cohen stated in his affidavit that G/C Contracting did not accept the signed agreement with Cohen's proposed changes, i.e, the counteroffer, and G/C Contracting has not contested this assertion. Accordingly, construing the evidence in Cohen's favor, the evidence establishes that the parties did not enter into a written contract, i.e., the Contractor and Subcontractor Agreement. The trial court thus erred in granting summary judgment to G/C Contracting on the basis that the Contractor and Subcontractor Agreement governed the dispute and in relying on that document's terms to compel arbitration.
 {¶ 41} G/C Contracting asserts that, even if the Contractor and Subcontractor Agreement had not been executed, the parties entered into an implied-in-fact contract. In essence, G/C Contracting asserts that the terms of the draft Contractor and Subcontractor Agreement to which both parties had agreed became the terms of an implied-in-fact contract. G/C Contracting argues that, because Cohen did not contest the arbitration provision, that provision is binding. As G/C Contracting states: "GC CONTRACTING would submit that certain individual terms within the written contract may be relevant even if the entirety of the *Page 14 
written contract itself is not the sole embodiment of the relationship of the parties." We disagree.
 {¶ 42} The elements of an implied contract are the same elements as an express agreement; there must be a definite offer, acceptance, and consideration. Garenz v. Nordson Corp. (1991), 68 Ohio App.3d 149,587 N.E.2d 475. "An implied contract is a contract inferred by a court from the circumstances surrounding the transaction, making it a reasonable or necessary assumption that a contract exists between the parties by tacit understanding." Criner v. Urologic Physicians Surgeons, Inc. (Dec. 15, 2000), Greene App. No. 2000-CA-28.
 {¶ 43} As an initial matter, we reject G/C Contracting's assertion that Cohen is necessarily bound by the terms of the Contractor and Subcontractor Agreement to which he did not make changes. Absent some evidence that Cohen agreed to negotiate the terms of the proposed Contractor and Subcontractor Agreement piecemeal and that he agreed to be bound by the apparently acceptable terms despite disagreement over certain other terms, all of the terms of the Contractor and Subcontractor Agreement were merely proposed terms. Under common law principles, Cohen was not bound to any term absent mutual agreement to all of the material terms. Moreover, there is no evidence that Cohen — by his conduct — agreed to the terms of the proposed Contractor and Subcontractor Agreement generally and the arbitration provision specifically. Neither party has presented evidence that Cohen and G/C Contracting have engaged in a course of conduct whereby the parties implicitly agreed to arbitrate their disputes.
 {¶ 44} Significantly, although Cohen did not make proposed alterations to the arbitration provision of the Contractor and Subcontractor Agreement (Section 13.9), Exhibit G contained several changes to Section 13, which addressed claims and dispute resolution. As *Page 15 
detailed above, Exhibit G contained modifications to Sections 13.1 and 13.10. G/C Contracting's claim that Cohen agreed to the arbitration provision as drafted — when Exhibit G contained changes to the dispute resolution procedures — is specious.
 {¶ 45} In sum, viewing the facts in the light most favorable to Cohen, the record indicates that Cohen and G/C Contracting did not enter into a contract based on the Contractor and Subcontractor Agreement and, thus, the parties were not contractually bound by those terms. Moreover, the record is devoid of evidence that Cohen agreed to arbitrate his disputes with G/C Contracting in the absence of an express written agreement to that effect. Rather, the facts before us indicate that the contractual relationship was established on October 4, 2003, and the parties could not agree to terms to vary that relationship.
 {¶ 46} Accordingly, the trial court erred when it granted summary judgment to G/C Contracting on the basis that a mandatory arbitration provision governed the dispute and when it stayed the litigation.
 {¶ 47} The assignments of error are sustained.
 {¶ 48} The judgment of the trial court will be reversed and the cause remanded for further proceedings.
FAIN, J. and GRADY, J., concur.
[1] Cohen's claims against the other defendants and their counterclaims against Cohen are not relevant to this appeal and will not be discussed further.
[2] Cohen's amended complaint alleged that he sent a written proposal to G/C Contracting on September 3, 2003, and that G/C Contracting responded to this offer on October 4, 2003 by orally telling Cohen to begin work on the project. Although the proposal was attached to his amended complaint, it was not properly submitted for purposes of summary judgment. Moreover, because his complaint was not verified, Cohen's detailed allegations cannot be considered in a motion for summary judgment. *Page 1