[Cite as *Brittingham v. Gen. Motors Corp.*, 2011-Ohio-6488.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

JULIE BRITTINGHAM, et al.                    :

    Plaintiffs-Appellants                  :        C.A. CASE NO.     24517

v.                                           :        T.C. NO.    01CV664

GENERAL MOTORS CORPORATION       :            (Civil appeal from
et al.                                                Common Pleas Court)

    Defendants-Appellees                 :


                              :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the   16th   day of    December   , 2011.

        . . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. No. 0036843, 40 N. Main Street, 1500 Kettering Tower, Dayton, Ohio 45423
        Attorney for Plaintiffs-Appellants

and

P. RICHARD MEYER, Atty. Reg. No. 0002243 and ROBERT N. WILLIAMS, Atty. Reg. No. 0002244, P. O. Box 2608, Jackson, WY 83001
        Of counsel for Plaintiffs-Appellants

JAMES A. COMODECA, Atty. Reg. No. 0038564, 255 E. 5th Street, Suite 1900, Cincinnati, Ohio 45202

and

MARILENA R. WALTERS, Atty. Reg. No. 0011960 and GREGORY P. MATHEWS, Atty. Reg. No. 0078276, 191 West Nationwide Blvd., Suite 300, Columbus, Ohio 43215

Attorneys for Defendants-Appellees

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Julie Brittingham, filed March 4, 2011. The appeal is taken from the trial court's February 9, 2011 "Decision, Order and Entry Sustaining, in part, Defendant Virginia Stull, M.D.'s Motion for Summary Judgment and Sustaining , in part, Plaintiffs' Cross Motion for Partial Summary Judgment," and from the trial court's February 9, 2011 "Decision, Order, and Entry Sustaining in part [GM's] Motion for Summary Judgment and Sustaining in part Plaintiffs' Cross Motion for Partial Summary Judgment."

{¶ 2} On February 9, 2001, Julie and David Brittingham filed a complaint against, in part, GMC and Stull. On March 15, 2001, the matter was removed to the United States District Court for the Southern District of Ohio, and the Court allowed the Brittinghams to amend their complaint. In March of 2002, the amended complaint was remanded back to the Montgomery County Court of Common Pleas as an original complaint and subsequently amended. The amended complaint was thereafter removed to federal court.

{¶ 3} In July, 2002 the Brittinghams moved to remand the amended complaint to state court, and their motion was denied. The Brittinghams obtained leave to amend their complaint again and moved the court to remand the matter to state court. The District Court determined that it no longer had federal question jurisdiction but denied the Brittinghams' motion to remand.

{¶ 4} Stull filed a motion for summary judgment with the District Court arguing that the statute of limitations barred the Brittinghams' claims. The District Court sustained Stull's

motion in November, 2003. The Brittinghams appealed the District Court's denial of their motion to remand and the grant of summary judgment against them. The Sixth Circuit found that the District Court lacked subject matter jurisdiction when the matter was removed to federal court for the second time, and it vacated the District Court's judgment and ordered the Court to remand the matter back to state court. *Brittingham v. General Motors Corp.* (C.A. 6, 2008), 526 F.3d. 272.

{¶ 5} On January 21, 2009, Stull and GM separately moved the trial court for summary judgment. On February 23, 2009, the Brittinghams opposed the motions and moved the court for partial summary judgment. Stull filed a Reply on March 16, 2009.

{¶ 6} The undisputed facts of this matter are set forth in the trial court's opinions as follows: "In the summer of 1997, Mrs. Bittingham applied for work at GM. At the request of GM, Mrs. Brittingham underwent a pre-employment physical examination at the GM plant in Moraine on August 1, 1997. Dr. Stull, the plant medical doctor, conducted the physical examination, which included a series of lung function tests. The first pulmonary function test showed Mrs. Brittingham's lung function to be 57% of predicted value and the second test showed it to be 55% of predicted value. Mrs. Brittingham signed a printout of the test results, but she did not read them nor did she receive any explanation of them. * * * Dr. Stull approved Mrs. Brittingham for employment with GM. Mrs. Brittingham was employed by GM from September 11, 1997 until August 1999. In September 1999, Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency ("AAD") a rare pulmonary condition. Mrs. Brittingham maintains that if Dr. Stull had declined her employment application, informed her of her impaired lung function, and referred her to a qualified physician, she would have stopped smoking, sought

treatment immediately and, as a result, would be engaging in most activities of normal everyday life.

{¶ 7} "On February 9, 2001, Plaintiffs filed a complaint alleging medical malpractice and loss of consortium against Dr. Stull. Plaintiffs' Second Amended Complaint filed on June 9, 2009 alleges claims for negligence, fraud, and loss of consortium. Under the negligence claim, Plaintiffs allege that Dr. Stull breached her duties to 1.) 'explain to Mrs. Brittingham the significance of the pulmonary function tests she underwent during her GM pre-employment physical,' 2.) 'refer [Mrs.] Brittingham to a qualified physician for follow-up, including without limitation further evaluation, diagnosis and treatment,' and 3.) 'Disapprove of [Mrs.] Brittingham for employment with GM, because she was physically unfit for such employment.' Plaintiffs' fraud claim alleges that Dr. Stull concealed the significance of Mrs. Brittingham's pulmonary function tests.

{¶ 8} "Dr. Stull has filed a motion for summary judgment in which she argues that, under Ohio's one-year medical malpractice statute of limitations, Plaintiffs' claim for negligence and fraud are time barred. Plaintiffs have filed a cross motion for partial summary judgment seeking the Court to confirm that: 1.) the Plaintiffs' negligence claim against Dr. Stull is not a 'medical claim' as defined in former R.C. 2305.11(D)(3); 2.) the Plaintiffs have stated a claim against Dr. Stull for ordinary negligence, not medical malpractice; 3.) the limitations period applicable to the Plaintiffs' negligence claim against Dr. Stull is the two-year term set forth in R.C. 2305.10(A); and 4.) the Plaintiffs' fraud claim against Dr. Stull is timely pursuant to R.C. 2305.09(C)." "Decision, Order, and Entry Sustaining, in Part, Defendant Virginia Stull, M.D.'s Motion for Summary Judgment and Sustaining, in part, Plaintiffs' Cross Motion for Partial

Summary Judgment."

{¶ 9} "On February 9, 2001, Plaintiffs filed a complaint alleging negligence and intentional misconduct, breach of fiduciary duty and loss of consortium against GM. Plaintiffs' Second Amended Complaint filed on June 9, 2009 alleges claims for negligence, fraud and loss of consortium. * * *

{¶ 10} "GM is seeking summary judgment on Plaintiffs' claims on the basis that GM did not owe Mrs. Brittingham the duty to explain the significance of the tests performed during the pre-employment physical examination, to refer Mrs. Brittingham to another physician for further examination, or to 'disapprove' Mrs. Brittingham for employment because she was allegedly physically unfit for employment with GM. GM also argues that Plaintiffs claims are untimely to the extent Plaintiffs hold GM liable for the conduct of Dr. Stull based on a theory of respondeat superior. Plaintiffs move this court for partial summary judgment to confirm that prospective employers have a legal duty to communicate to job applicants the significance of adverse medical test results obtained as a result of pre-employment physicals and that the limitations period applicable to the Plaintiffs' negligence claim against GM is the two-year term set forth in R.C. 2305.10(A)." "Decision, Order, and Entry Sustaining in part [GM's] Motion for Summary Judgment and Sustaining in part Plaintiffs' Cross Motion for Partial Summary Judgment."

{¶ 11} The trial court determined that the Plaintiffs claims against Dr. Stull for negligence and fraud are medical claims barred by the one year statute of limitations set forth in R.C. 2305.11(B)(1), and that Plaintiffs' claims for negligence and fraud against GM, on the basis of vicarious liability, also fail. Regarding Mr. Brittingham's loss of consortium claims, the court determined that those claims were brought within the applicable statute of limitations set forth in

R.C. 2305.99.

{¶ 12} The Brittinghams assert four assignments of error herein. Their first assigned error is as follows:

{¶ 13} "THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE VIRGINIA STULL, M.D. AND AGAINST PLAINTIFF-APPELLANT JULIE BRITTINGHAM ON STATUTE OF LIMITATIONS GROUNDS."

{¶ 14} "Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted). Our review of the trial court's decision to grant summary judgment is de novo." *Cohen v. G/C Contracting Corp.,* Greene App. No. 2006 CA 102, 2007-Ohio-4888, ¶ 20.

{¶ 15} "In determining the proper statute of limitations for a cause of action, the court must review the complaint to determine 'the essential character' of the claim. *Does v. First United Methodist Church* (1994), 68 Ohio St.3d 531 * * *; *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, * * * . '[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.' (Citations omitted)." *Grover v. Bartsch*, 170 Ohio App.3d 188, 202, 2006-Ohio-6115, ¶ 52.

{¶ 16} The Brittinghams assert that their negligence claim against Dr. Stull is not a

medical claim. "'Medical claim' means any claim that is asserted in any civil action against a physician * * * and that arises out of the medical diagnosis, care, or treatment of any person. 'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person." R.C. 2305.11(D)(3)(2000). "[A]n action upon a medical * * * claim shall be commenced within one year after the cause of action accrued[.]" R.C. 2305.11(B)(1)(2000).

{¶ 17} According to the Brittinghams, the claim against Dr. Stull is not a medical claim because there was no physician-patient relationship between Mrs. Brittingham and Dr. Stull, and because the claim does not arise out of Mrs. Brittingham's medical diagnosis, care or treatment but rather out of Dr. Stull's failure to inform Mrs. Brittingham that her test results were abnormal, to refer her to a physician for follow-up care, and to decline her employment at GM. The Brittinghams assert that the claim is one for "ordinary negligence." The Brittinghams rely on *Smith v. Katzman* (1992), 81 Ohio App.3d 682, 686 (applying two-year statute of limitations and determining that the "fact that Mr. Smith was required to take the examination as a precondition to Social Security benefits and that its purpose was to obtain information for the Social Security Administration is distinguishable from the diagnosis, care or treatment which constitutes a medical claim"), and *New York Central Rd. Co. v. Wiler* (1931), 124 Ohio St.118, 122-23 (determining that the requirement that an employee be examined to provide information to the employer is distinguishable from the treatment or attempt to cure that creates a physician-patient relationship).

{¶ 18} In each of those cases, as the trial court correctly determined, the purpose of the examinations was not to diagnose, treat or cure but to further the purposes of the Social Security

Administration, in *Katzman*, and the employer, in *Wiler*. Similarly, the purpose of the examination conducted by Dr. Stull was to further GM's purposes in evaluating Mrs. Brittingham for prospective employment. When the substance of the negligence claim is analyzed however, it is clearly grounded in medical malpractice. In other words, the claim arises out of the medical evaluation, diagnosis and care of Mrs. Brittingham. According to the negligence claim against Stull, the doctor "had a duty to explain to Julie Brittingham the significance of the pulmonary function tests," and "to refer [her] to a 'qualified physician' for follow up, including without limitation *further evaluation, diagnosis and treatment.*" (Emphasis added).

{¶ 19} Regarding the fraud claim, the Brittinghams asserted in their complaint that Stull had a "duty to explain to Julie Brittingham the significance of her GM pre-employment function tests," but instead concealed the significance, leading her to incorrectly believe that her "pulmonary function was normal." Again, the claim involves medical evaluation, diagnosis and treatment. As the trial court noted, the Brittinghams' memorandum in opposition to Stull's motion for summary judgment concedes that if the court were to determine that the negligence claim is a medical claim, then the fraud claim is also bound by the one year statute of limitations. See *Knepler v. Cowden* (Dec. 23, 1999), Montgomery App. No. 17473 (holding that Plaintiff's claim for breach of contract sounded in malpractice as a matter of law, since it "is well settled that the misconduct of medical professionals constitutes malpractice regardless of whether such misconduct is framed in terms of negligence or breach of contract.") See also *Harris v. Ohio State Univ.*, Franklin App. No. 06AP-1092, 2007-Ohio-1812, ¶ 10 (The "statute's definition of 'medical claim' does not permit us to split a fraud theory involving medical treatment off from a professional negligence claim involving medical treatment.")

{¶ 20} We conclude that the trial court correctly determined that the negligence and fraud claims against Dr. Stull are subject to the one year statute of limitations. Since it is undisputed that the Brittinghams filed their complaint more than one year after Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency Disorder, the trial court did not err in entering summary judgment in favor of Dr. Stull on statute of limitations grounds. The Brittinghams' first assignment of error is overruled.

{¶ 21} The Brittinghams' second assignment of error is as follows:

{¶ 22} "THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT PLAINTIFFS-APPELLANTS HAD NOT ALLEGED 'ANY DIRECT OR INDEPENDENT TORTIOUS CONDUCT ON THE PART OF GM.'"

{¶ 23} According to the Brittinghams, "the trial court did not review the second amended

{¶ 24} complaint, or the Brittinghams' motion against GM for partial summary judgment, before entering summary judgment for GM on statute of limitations grounds."

{¶ 25} In their negligence claim against GM, as the trial court specifically noted, the Brittinghams asserted that GM had a duty to explain the pulmonary function tests, a duty to refer Mrs. Brittingham to a physician for follow-up treatment, and a duty to disapprove of her employment. The trial court further noted that the Brittinghams "move this court for partial summary judgment to confirm that prospective employers have a legal duty to communicate to job applicants the significance of adverse medical test results obtained as a result of pre-employment physicals * * * ."

{¶ 26} The Brittinghams' rely upon *Murphy v. City of Reynoldsburg* (1992), 65 Ohio St.3d 356, syllabus ("Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly

examine all appropriate material filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error.") In *Murphy*, the trial judge scheduled a hearing on the defendants' motion for summary judgment, and at the start of the hearing, the judge stated, "'Let me be up front with all of you. I haven't read your motion. I haven't read your briefs. So, educate me.'" Id., at 357. After the motion was argued, the court granted the defendants' motion from the bench. Id.

{¶ 27} There is nothing before us to suggest that the trial court failed to consider the appropriate materials before it. "[A] general principle of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record." *Thomas v. Thomas* (Sept. 17, 1999), Clark App. No. 98-CA-55. Since the Brittinghams have not affirmatively demonstrated neglect on the part of the trial court in sustaining in part GM's motion for summary judgment, they are not entitled to a remand of the matter, and their second assigned error is overruled.

{¶ 28} The Brittinghams' third assigned error is as follows:

{¶ 29} "THE TRIAL COURT ERRED BY FAILING TO ACKNOWLEDGE GM'S LEGAL DUTY TO DISCLOSE TO PLAINTIFF-APPELLANT JULIE BRITTINGHAM THE FACT THAT HER PRE-EMPLOYMENT LUNG FUNCTION TESTS WERE GROSSLY AND OBJECTIVELY ABNORMAL."

{¶ 30} The Brittinghams urge us to recognize the duties asserted in their negligence claim against GM based upon certain criteria set forth in *Third National Bank and Trust Co. v. Diamond Savings and Loan Co.* (1989), 43 Ohio App.3d 140, 143, as well as similar principles set forth in the Restatement (Second) of Torts, § 323.

{¶ 31} The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318.

{¶ 32} In *Third National Bank,* this Court considered a number of policy considerations upon which the imposition of a legal duty must be balanced, as set forth in *Sun 'n Sand, Inc. v. United California Bank* (1978), 21 Cal. 3d 671, 148 Cal.Rptr. 329, 582, as follows:

{¶ 33} "'The most important of these were set forth in *Rowland v. Christian* (1968), 69 Cal.2d 108, 113, [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and include '* * * the foreseeablility of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' * * *

{¶ 34} "'It is settled, however, that the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk * * * . Citations omitted)."

{¶ 35} The Restatement provides,

{¶ 36} "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

{¶ 37} "(a) his failure to exercise such care increases the risk of such harm or

{¶ 38} "(b) the harm is suffered because of the other's reliance upon the undertaking."

{¶ 39} The Brittinghams argue that the above criteria "weigh in favor of establishing a prospective employer's duties" to disclose to an applicant abnormal test results and refer the applicant to a qualified physician, and to disapprove employment, in that the harm to the applicant is foreseeable; the applicant has suffered injury with certainty; the connection between the failure to disclose and the injury is close; failure to disclose is morally reprehensible; the duty will avoid harm that will otherwise be suffered absent disclosure; the burden on the employer to disclose is slight compared to the benefit to the applicant; the employer is better able to insure against the harm caused by failure to disclose; and there is no legal or moral basis to shift the costs of harm caused by the failure to disclose to the applicant.

{¶ 40} The Brittinghams direct our attention to several authorities to support their argument regarding GM's duty to Mrs. Brittingham. In *Union Carbide & Carbon Corp. v. Stapleton* (6th Cir. 1956) 237 F.2d 229, which was not an action for malpractice but for negligence, at issue was whether the defendant had a duty to warn its employee, Stapleton, that he was suffering from tuberculosis. From the time he was first employed in 1944 until 1952, 14 X-rays were taken of Stapleton's chest. The Sixth Circuit noted that the defendant had no obligation to give Stapleton a physical examination but, as his employer, "the appellant became aware that Stapleton had tuberculosis through its voluntary physical examination of him. It then became the appellant's duty in the exercise of ordinary care to inform him of his condition. That duty persisted throughout the period of the employer-employee relationship, the relationship which afforded both the occasion for the appellant's knowledge and the opportunity to impart its knowledge to him." Id., at 234.

{¶ 41} In *Coffee v. McDonnell-Douglas Corp.* (1972), 8 Cal.3d 551, 503 P.2d 1366, 105 Cal.Rptr. 358, the Supreme Court of California addressed the issue of when an employer, having required a prospective employee to submit to an examination for physical fitness for employment, assumes a duty to discover a diseased condition. The court determined that "whether the employer in such instance is liable for not discovering the disease depends upon whether or not in light of all of the circumstances he conducted and completed the examination with due care. Included among the relevant circumstances is the purpose fo the examination." In *Coffee*, the purpose of the physical test was to determine plaintiff's physical fitness as a pilot, and his blood test report, indicating an inflammatory condition, "was never seen by defendant's medical employees because of a corporate procedure allowing the report to be filed without evaluation. The question posed, already answered by the jury in the affirmative, was whether in the exercise of due care, defendant 'should have known' of the results of the blood test. (Citation omitted). Viewed in this context, the failure 'to discover' the inflammatory condition in the plaintiff was the consequence of defendant's own negligence." See also *James v. United States* (N.D. Cal. 1980), 483 F.Supp. 581, 585. (The reasoning of the Coffee decision is dispositive here. Defendant had no duty to discover James' tumor. Having made a chest X-ray an essential part of the preemployment examination to determine an applicant's physical fitness, however, defendant failed to use due care when, through a clerical error, the report on the X-ray was not brought to the attention of the examining physician."); *Dornak v. Lafayette General Hospital* (1981), 399 So.2d 168, 170-71 ("The duty owed was to inform plaintiff of her tubercular condition discovered during a pre-employment physical examination."); *Daly v. United States* (1991), 946 F.2d 1467 (holding, in the context of a pre-employment physical, that

an examining physician under Washington law has a duty to inform those examined, in the absence of a doctor patient relationship, of abnormal test results); *McKinney v. Bellevue Hospital* (1992), 183 A.D.2d 563 ("The tendency of the average person, in similar circumstances, to interpret the employer's silence as an indication of good health is so apparent and the consequence of such reliance so potentially serious that we conclude that the law imposes a duty to disclose upon the employer. In comparison with the harm to be abated, the burden placed upon the employer is slight and promotes the public welfare.")

{¶ 42} Finally, the Brittinghams rely upon *Meinze v. Holmes,* (1987), 40 Ohio App.3d 143, wherein the First District, relying in part upon an employer's duty to warn an employee of a "'hidden'" danger, as set forth in *Stapleton*, determined that a "physician, employed by an insurer, who examines an insured and thereby discovers a significant medical condition or information relating to treatment that is unknown to the insured has a duty to disclose such discovery to the insured where a reasonable physician of ordinary skill and diligence would disclose the information in question, even though a doctor-patient relationship does not exist. This duty is fulfilled by the insurer's transmittal of the pertinent medical information to the insured's attorney."

{¶ 43} GM directs our attention in part to *Eaton v. Contintental General* (N.D. Ohio 2001), 147 F.Supp.2d 829, aff'd, (6th. Cir. 2003) 59 Fed.Appx. 719. Eaton sued a disability insurance provider that had performed a medical examination for the purpose of considering his application for insurance, and the trial court determined that the insurer had no duty under common law to notify him about his HIV positive test result. The court further determined that the "relationship between an insurance company and an applicant is commercial, not medical."

Id., at 834.

{¶ 44} We agree with GM that the above cases relied upon by the Brittinghams do not involve duties nearly as extensive as those the Brittinghams would have this Court impose, namely to explain the significance of Mrs. Brittingham's test results, refer her to a treating physician, and disapprove her employment. We note that in her affidavit filed in federal court, attached to the Brittinghams' memorandum in opposition to GM's motion for summary judgment, Mrs. Brittingham averred, "I went to the August 1, 1997, physical examination solely for the purpose of seeking employment at GM. * * * ." Mrs. Brittingham's test results indicate "possible severe obstructive disease," and we note there is no suggestion in the record that GM was aware that Mrs. Brittingham specifically suffered from AAD, a condition Mrs. Brittingham herself describes as rare. Further, the Brittinghams do not allege, as in *Meinze*, that GM failed to disclose Mrs. Brittingham's test results; in her second amended complaint she concedes that the printouts of the spirometry results, which indicate "possible severe obstructive disease," were presented to her by Dr. Stull, and she signed them. Further, *Meinze* involved a physician's duty to disclose and not an employer's. Finally, we conclude that the nature of Mrs. Brittingham's relationship with GM was analagous to that of the applicant with the insurer in *Eaton* and commercial in nature.

{¶ 45} As GM points out, regarding the voluntary undertaking doctrine set forth in the Restatement, there is nothing in the record to support an assertion that GM gratuitously or for consideration undertook to render services to Mrs. Brittingham.

{¶ 46} Regarding the Brittinghams' assertions that GM's written company policy mandates her referral to a treating physician, we note that the "Referral Criteria" section in Policy

No: C-ETS 2, Evaluative Testing and Screening, provide that they are "guidelines only," and they do not contain mandatory language requiring referral but are suggestive in nature. Further, as GM asserts, the Brittinghams do not cite to any case law that creates a duty on a prospective employer based on a violation of internal policy. Finally, the policy refers exclusively to "employees" and not applicants or prospective employees.

{¶ 47} The existence of a duty is a question of law and the Brittinghams have not shown as a matter of Ohio law a basis to impose upon GM the duties to explain the significance of Mrs. Brittingham's spirometry results to her, to refer her to a treating physician, or to disapprove employment, and the Brittinghams' third assignment of error is overruled.

{¶ 48} The Brittinghams' fourth assignment of error is as follows:

{¶ 49} "THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE GENERAL MOTORS CORPORATION AND AGAINST PLAINTIFF-APPELLANT JULIE BRITTINGHAM ON THE GROUNDS THAT THE ONE-YEAR MEDICAL MALPRACTICE STATUTE OF LIMITATIONS INSULATED IT FROM VICARIOUS LIABILITY FOR THE NEGLIGENT ACTS OF ITS EMPLOYEE, VIRGINIA STULL, M.D."

{¶ 50} This argument relates directly to the Brittinghams' first assigned error in that any liability on the part of GM due to the conduct of Dr. Stull, based upon a theory of respondeat superior, must fail due to the Brittinghams' failure to timely file their medical claim against Dr. Stull within the one-year period of limitation. "Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable." *National Union Fire Ins. Co. of Pittsburgh, PA v.*

{¶ 51} *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 22. Accordingly, the Brittinghams' fourth assignment of error is overruled.

{¶ 52} The judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Thomas J. Intili
P. Richard Meyer
Robert N. Williams
James A. Comodeca
Marilena R. Walters
Gregory P. Mathews
Hon. Dennis Adkins